PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

JOHN NEUKOM (SBN 275887)
john.neukom@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

Attorney for Defendants
Ripple Labs Inc., XRP II, LLC, Bradley
Garlinghouse, Christian Larsen, Ron Will,
Antoinette O'Gorman, Eric van Miltenburg,
Susan Athey, Zoe Cruz, Ken Kurson, Ben
Lawsky, Anja Manuel, and Takashi Okita

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVNER GREENWALD, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RIPPLE LABS INC., et al., <br><br> Defendants. | CASE NO.: 18-cv-4790 <br><br> CLASS ACTION <br><br> **NOTICE OF REMOVAL** |

# **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ............................................................................................ 1

II.  REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT .................... 2

III. SECTION 22(A) OF THE SECURITIES ACT DOES NOT BAR REMOVAL .................. 3

    A.   Luther Does Not Bar Removal Here .......................................................... 4

    B.   Luther Has Been Abrogated By the Supreme Court .................................... 6

    C.   Luther Should Be Reconsidered ............................................................... 7

IV.  THIS REMOVAL NOTICE IS TIMELY AND SATISFIES ALL
    PREREQUISITES. ....................................................................................... 10

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>                                                                                                    **PAGE(S)**

3    <u>Broadway Grill, Inc. v. Visa Inc.</u>,
         856 F.3d 1274 (9th Cir. 2017) ........................................................................ 2
4
     <u>California Public Employees Retirement System v. WorldCom, Inc.</u>,
5        368 F.3d 86 (2d Cir. 2004) ............................................................................. 9

6    <u>Cyan, Inc. v. Beaver County Employees Retirement Fund</u>,
         138 S. Ct. 1061 (2018) .................................................................................... 4
7
     <u>Dart Cherokee Basin Operating Co. v. Owens</u>,
8        135 S. Ct. 547 (2014) .................................................................................. 6, 7

9    <u>FDIC v. Countrywide Financial Corp.</u>,
         No. 11-CV-10400-MRP-MANx, 2012 WL 12897152 (C.D. Cal. Mar. 20, 2012) ...................... 9
10
     <u>Holt v. Noble House Hotels & Resort, Ltd.</u>,
11       No. 17CV2246-MMA (BLM), 2018 WL 539176 (S.D. Cal. Jan. 23, 2018) ............................. 3

12   <u>Jordan v. Nationstar Mortgage LLC</u>,
         781 F.3d 1178 (9th Cir. 2015) ..................................................................... 6, 7
13
     <u>Katz v. Gerardi</u>,
14       552 F.3d 558 (7th Cir. 2009) ................................................................... 7, 8, 9

15   <u>Life of the South Insurance Co. v. Carzell</u>,
         851 F.3d 1341 (11th Cir. 2017) ...................................................................... 4
16
     <u>Luther v. Countrywide Home Loans Servicing LP</u>,
17       533 F.3d 1031 (9th Cir. 2008) ...............................................................passim

18   <u>Miller v. Gammie</u>,
         335 F.3d 889 (9th Cir. 2003) ......................................................................... 6
19
     <u>Morrison v. National Australia Bank Ltd.</u>,
20       561 U.S. 247 (2010) .................................................................................. 5

21   <u>New Jersey Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4</u>,
         581 F. Supp. 2d 581(S.D.N.Y. 2008) ............................................................ 5, 7
22
     <u>Public Employees Retirement System of Mississippi v. Morgan Stanley</u>,
23       605 F. Supp. 2d 1073 (C.D. Cal. 2009) .............................................................. 9

24   <u>Rossetti v. Stearn's Products, Inc.</u>,
         No. CV 16-1875-GW (SSx), 2016 WL 3277295 (C.D. Cal. June 6, 2016) .......................... 3
25
     <u>Russello v. United States</u>,
26       464 U.S. 16 (1983) .................................................................................. 9

27   <u>SEC v. Glenn W. Turner Enterprises, Inc.</u>,
         474 F.2d 476 (9th Cir. 1973) ......................................................................... 8
28

U.S. Industries, Inc. v. Gregg,
    348 F. Supp. 1004 (D. Del. 1972), rev'd on other grounds, 540 F.2d 142 (3d Cir. 1976) ............ 8

United States v. Providence Journal Co.,
    485 U.S. 693 (1988) .......................................................................................................................... 9

**STATUTES**

15 U.S.C. § 77p ..................................................................................................................................... 3, 4

15 U.S.C. § 77v ..................................................................................................................................... 3, 4

28 U.S.C. § 1332 ................................................................................................................................ passim

28 U.S.C. § 1441 ..................................................................................................................................... 8, 9

28 U.S.C. § 1446 ................................................................................................................................... 1, 10

28 U.S.C. § 1453 ................................................................................................................................ passim

**OTHER AUTHORITIES**

2 McLaughlin on Class Actions § 12:6 (14th ed. 2017) .......................................................................... 9

15 Moore's Federal Practice – Civil § 102.73 (2018) ............................................................................. 4

16 Moore's Federal Practice – Civil § 107.91[1][b] (2018) .................................................................... 7

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**:  Please take notice that Defendants Ripple Labs Inc. ("Ripple"), XRP II, LLC ("XRP II"), Bradley Garlinghouse, Christian Larsen, Ron Will, Antoinette O'Gorman, Eric van Miltenburg, Susan Athey, Zoe Cruz, Ken Kurson, Ben Lawsky, Anja Manuel, and Takashi Okita (collectively, "Defendants"), by and through their undersigned attorneys, hereby remove the above-captioned civil action, and all claims and causes of action therein, from the Superior Court of the State of California, County of San Mateo, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332(d) and 1453.  As required by 28 U.S.C. § 1446(a), all process, pleadings, and orders served on Defendants in the action to date are attached hereto as Exhibit A.  As the requisite "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), Defendants state as follows:

**I.    INTRODUCTION**

1.    This action arises out of Plaintiff's alleged purchase of a virtual currency, XRP, on "global, online cryptocurrency exchanges."  (Compl. ¶¶ 14, 78-79.)  Plaintiff does not allege that he lacked information about the nature of these transactions.  Nevertheless, Plaintiff claims that he was somehow injured because Defendants were allegedly required to register XRP as a "security" with the Securities & Exchange Commission ("SEC") but failed to do so.

2.    On July 3, 2018, Plaintiff filed a putative class action complaint in the Superior Court of California, County of San Mateo, purporting to sue on his own behalf and on behalf of "all persons or entities who purchased XRP from July 3, 2015 through the present."  (Compl. ¶ 87.)  Plaintiff asserts claims under Sections 5, 12(a)(1), and 15 of the Securities Act of 1933 ("Securities Act").  Plaintiff seeks, among other things, rescission of XRP purchases and/or damages (Compl. at 21(C)(D)) and a constructive trust over the proceeds of Defendants' alleged sales of XRP (Compl. at 21(G)).

3.    Defendants now remove this putative class action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453.  The Court has jurisdiction over the claims pursuant to 28 U.S.C. § 1332(d).

1

## II.     REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT

4.     This alleged nationwide securities action falls within the original jurisdiction of this Court under CAFA.  Pursuant to CAFA, a putative class action may be removed to the appropriate federal district court if (1) the action purports to be a "class" action brought on behalf of 100 or more members; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant or any member of the class is a member of a foreign state and any defendant is a citizen of a state; and (3) the amount in controversy exceeds $5 million.  See 28 U.S.C. §§ 1332(d)(2), (2)(A), (5)(B), 1453(b).  This action meets each of those requirements.

5.     ***Class exceeds 100 members.***  First, this is an alleged class action brought on behalf of over 100 members.  Plaintiff purports to assert claims on behalf of a "class" consisting of "thousands of members." (Compl. ¶¶ 87, 89.)  That well exceeds the requirements of CAFA.  See 28 U.S.C. § 1332(d)(1)(B), (5)(B).

6.     ***Minimal Diversity.***  Second, minimal diversity of citizenship exists (i.e., at least one class member plaintiff has a different citizenship from any of the defendants), as required by Section 1332(d)(2)(A).  On the one hand, at least three of the Defendants are allegedly citizens of California. (Compl. ¶¶ 15-27.)  On the other hand, there are members of the putative class who are citizens of states other than California or citizens of foreign states, including Plaintiff, who is a resident of Israel. (Compl. ¶ 14.)  The Complaint purports to be brought on behalf of "all persons or entities who purchased XRP from July 3, 2015 through the present" without any geographic limitation. (Compl. ¶ 87.)  The Complaint further alleges that Defendants have sold XRP to putative class members on "global, online cryptocurrency exchanges," which are accessible on the internet and therefore throughout the United States and the world. (Compl. ¶¶ 78-79.)  Additionally, the Complaint alleges that "[b]y way of the internet, including Ripple Labs' website, Twitter, and the over 50 cryptocurrency exchanges that trade XRP, interstate means are used in connection with the offer and sale of XRP." (Compl. ¶ 77.)  Given these allegations, citizens of states other than California or citizens of foreign states, including Plaintiff himself, have undoubtedly purchased XRP.  Therefore, members of the putative class are citizens of states different from Defendants.  See, e.g., Broadway Grill, Inc. v. Visa Inc., 856 F.3d 1274, 1276 (9th

NOTICE OF REMOVAL     Case No. 18-cv-4790

Cir. 2017) (concluding that minimal diversity was satisfied when class definition, as pleaded, included a nationwide class and many non-citizens of California); <u>Rossetti v. Stearn's Prods., Inc.,</u> 2016 WL 3277295, at *1-2 (C.D. Cal. June 6, 2016) (action pled as a nationwide class satisfied minimal diversity requirement).

7.    ***Amount in Controversy***.  Third, this action meets CAFA's amount-in-controversy requirement of $5 million. 28 U.S.C. § 1332(d)(6).   Among other things, Plaintiff seeks the rescission of Defendants' alleged sales of XRP to putative class members.  (Compl. at 21(C).) Plaintiff alleges that in the first quarter of 2018 alone, "Defendants sold at least $167.7 million worth of XRP." (Compl. ¶ 52.)  If all such sales were rescinded, the amount in controversy would exceed $5 million.  While Defendants strongly deny that Plaintiff or any putative class members are entitled to recover any amount (or any other relief), Plaintiff plainly seeks to recover an aggregate amount over $5 million.

8.    Moreover, Plaintiff seeks a constructive trust over the proceeds of Defendants' alleged sales of XRP.  (Compl. at 21(G).)  Based on the allegations in the Complaint, this amount is at least $167.7 million, in excess of the $5 million minimum.  (Compl. ¶ 52); <u>see also</u> <u>Holt v. Noble House Hotels & Resort, Ltd.,</u> 2018 WL 539176, at *4 (S.D. Cal. Jan. 23, 2018) (considering amount over which plaintiff was seeking a constructive trust and disgorgement in assessing amount in controversy).

9.    ***Exceptions***.  None of the exceptions to removal set forth in CAFA applies to bar removal here.  This action does not (i) involve a "covered security," as defined by 15 U.S.C. § 77p(f)(3); (ii) relate to the internal affairs or governance of a corporation and arise under the laws of the state in which such corporation was formed; or (iii) relate to the rights, duties, and obligations relating to or created by or pursuant to any security.  <u>See</u> 28 U.S.C. § 1453(d)(1)-(3).

## III.    <u>SECTION 22(A) OF THE SECURITIES ACT DOES NOT BAR REMOVAL</u>

10.    The fact that Plaintiff purports to bring claims under the Securities Act does not preclude removal here.  Section 22(a) of the Securities Act ("Section 22(a)") provides, "Except as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."   15

1   U.S.C. § 77v(a).  Section 22(a) is known as a removal bar.  Although the Supreme Court recently

2   concluded that the exception to the removal bar in section 77p(c)—a reference to the Securities

3   Litigation Uniform Standards Act ("SLUSA")—does not permit removal of class actions alleging

4   only Securities Act violations, <u>Cyan, Inc. v. Beaver County Employees Retirement Fund</u>, 138 S.

5   Ct. 1061, 1075-76 (2018), the Supreme Court has not prohibited removal of class actions asserting

6   Securities Act claims on the basis of CAFA, which expressly permits removal.

7          **A.**     **<u>Luther Does Not Bar Removal Here</u>**

8          11.    Defendants expressly acknowledge the decision of the United States Court of

9   Appeals for the Ninth Circuit in <u>Luther v. Countrywide Home Loans Servicing LP</u>, 533 F.3d 1031,

10  1034 (9th Cir. 2008).  In <u>Luther</u>, the plaintiff asserted claims under the Securities Act.  <u>See id.</u> at

11  1032-33.  The court held that a class action brought in state court alleging violations of the

12  Securities Act was not removable even though it met the requirements of CAFA.  <u>Id.</u> at 1034.  But

13  <u>Luther</u> involved a removal based on minimum diversity between citizens of the United States.  <u>Id.</u>

14  1033-34.  It did not address a situation where, as here, CAFA permitted removal based not only on

15  minimal diversity jurisdiction, but also on alienage jurisdiction because the Securities Act class

16  action was brought by a citizen of a foreign state on behalf of a purportedly worldwide class of

17  persons who purchased an alleged security from "global, online cryptocurrency exchanges."

18  (Compl. ¶ 79.)

19         12.    This distinction is substantively important.  "[T]he major purpose of alienage

20  jurisdiction is to promote international relations by assuring other countries that litigation involving

21  their nationals will be treated at the national level."  <u>Life of the S. Ins. Co. v. Carzell</u>, 851 F.3d

22  1341, 1347 (11th Cir. 2017) (alteration in original) (applying alienage provisions of CAFA); <u>see</u>

23  <u>also</u> 15 Moore's Federal Practice – Civil § 102.73 (2018) ("Alienage jurisdiction was intended to

24  provide the federal courts with a form of protective jurisdiction over matters implicating

25  international relations, in which the national interest is paramount," including when

26  "entanglements with other sovereigns that might ensue from failure to treat the legal controversies

27  of aliens on a national level.").

28         13.    CAFA (i) broadened the definition of diversity and alienage jurisdiction in 28

4

U.S.C. § 1332 as it applied to certain class actions, see 28 U.S.C. § 1332(d); and (ii) created a separate statute allowing for removal of class actions falling within that broadened definition, see 28 U.S.C. § 1453.  In doing so, CAFA specifically expanded the federal courts' jurisdiction "by establishing original jurisdiction in the federal courts for certain class actions that are national or international in scope," subject to certain enumerated exceptions.  New Jersey Carpenters Vacation Fund v. HarborView Mortg. Loan Trust, 581 F. Supp. 2d 581, 583 (S.D.N.Y. 2008).

14.     A case like this one that seeks to apply, for the first time, U.S. securities laws to transactions that take place throughout the globe has just such a national and international scope.  Among other things, it implicates international relations as other countries seek to regulate transactions in virtual currencies that take place within their own borders.  See HarborView, 581 F. Supp. 2d at 588 (concluding that Securities Act case was removable under CAFA when it involved matters that were affecting the "international economy").  While Defendants in no way concede that the Securities Act applies to international transactions—it does not, see Morrison v. National Australia Bank Ltd., 561 U.S. 247 (2010)—Plaintiff's attempt to apply the Securities Act to such transactions takes this case outside the purview of Luther.

15.     Indeed, the basis for the Luther court's holding that Section 22(a) bars removal notwithstanding CAFA was that Section 22(a) is "narrow, precise, and specific" and "applies only to claims arising under the Securities Act," whereas CAFA has broader application.  Luther, 533 F.3d at 1034.  But if Section 22(a) were interpreted to bar removal of Securities Act claims even when such claims purported to regulate transactions on an international scale, Section 22(a) would not have the "narrow, precise, and specific" application the Luther court described.  Therefore, the reasoning in Luther does not apply to the situation here and does not bar removal.

16.     Defendants recognize that, if the Court does not conclude that Luther is distinguishable, the decision in Luther is binding precedent that appears to bar removal here. However, Defendants further contend that (i) subsequent United States Supreme Court authority has abrogated the conclusion and reasoning in Luther, and, if not, (ii) post-Luther developments in the law counsel that the Ninth Circuit should reconsider Luther.

17.     Defendants acknowledge that, to the extent the Court does not believe that Luther

1  has been abrogated, this Court may be bound by <u>Luther</u> and compelled to remand this action.  In

2  such circumstance, Defendants would request that the Ninth Circuit review such remand order so

3  that it may reconsider <u>Luther</u>.  CAFA itself provides for an appeal to the Ninth Circuit from any

4  remand decision under CAFA.  <u>See</u> 28 U.S.C. § 1453(c)(1) ("[A] court of appeals may accept an

5  appeal from an order of a district court granting or denying a motion to remand a class action to the

6  State court from which it was removed if application is made to the court of appeals not more than

7  10 days after entry of the order.").

8          **B.**      **<u>Luther Has Been Abrogated By the Supreme Court</u>**

9          18.      The Ninth Circuit has recognized that its own decisions are not binding on district

10 courts if their "reasoning or theory" is "clearly irreconcilable" with subsequently decided United

11 States Supreme Court authority.  <u>Miller v. Gammie</u>, 335 F.3d 889, 893 (9th Cir. 2003).  Such is the

12 case with <u>Luther</u>.  In reaching its holding, <u>Luther</u> relied on the general rules that "removal statutes

13 are strictly construed against removal," and "any doubt is resolved against removability."  <u>Luther</u>,

14 533 F.3d at 1034.  However, in <u>Dart Cherokee Basin Operating Co. v. Owens</u>, 135 S. Ct. 547

15 (2014), decided *after* <u>Luther</u>, the Supreme Court declared that "no antiremoval presumption attends

16 cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in

17 federal court."  <u>Id.</u> at 554.  On the contrary, CAFA's "provisions should be read broadly, with a

18 strong preference that interstate class actions should be heard in a federal court if properly removed

19 by any defendant."  <u>Id.</u>  (citation omitted).  Accordingly, <u>Luther</u>'s strict construction against

20 removal to resolve the perceived conflict between Section 22(a)'s removal bar and CAFA's

21 removal provisions cannot be squared with the Supreme Court's express instructions in the more

22 recently decided <u>Dart Cherokee</u> "to interpret CAFA's provisions under section 1332 broadly in

23 favor of removal."  <u>Jordan v. Nationstar Mortg. LLC</u>, 781 F.3d 1178, 1184 (9th Cir. 2015)

24 (reversing order of district court, "[i]n light of the Supreme Court's clear statement in <u>Dart</u>

25 <u>Cherokee</u> that Congress intended for no antiremoval presumption to attend CAFA cases" and

26 rejecting <u>Luther</u>'s strict construction of CAFA against removal because it was inconsistent with

27 <u>Dart Cherokee</u>).

28         19.      Likewise, <u>Luther</u>'s interpretation of CAFA as a "general grant of the right of

removal of high-dollar class actions" that excludes nationwide class actions asserting claims under the Securities Act, Luther, 533 F.3d at 1034, cannot be squared with Dart Cherokee's characterization of CAFA as a tool to ensure federal consideration of "interstate cases of national importance." Dart Cherokee, 135 S. Ct. at 554 (citation omitted). In fact, other courts have concluded that application of CAFA to interstate securities class actions of national importance is essential to fulfill the purposes of CAFA. See HarborView, 581 F. Supp. 2d at 587-88 (concluding that "CAFA overrides the Securities Act's anti-removal provision because this case involves exactly the type of case CAFA was concerned about—a large, non-local securities class action dealing with a matter of national importance, the mortgage-backed securities crisis that is currently wreaking havoc with the national and international economy"). The ruling in Dart Cherokee thus "undercut[s] the theory or reasoning underlying [Luther] in such a way that [Luther and Dart Cherokee] are clearly irreconcilable." Jordan, 781 F.3d at 1183 n.2 (first alteration in original) (citation omitted); see also 16 Moore's Federal Practice - Civil § 107.91[1][b] (2018) (observing that "[g]iven the Supreme Court's assertion that no antiremoval presumption applies to cases removed under CAFA," the decision in Luther was likely incorrect). Thus, Luther has been abrogated.

## C.   **Luther Should Be Reconsidered**

20.   If the Court does not conclude that post-Luther decisions have abrogated Luther, Defendants believe Luther should be reconsidered in light of post-Luther developments in the law.

21.   In addition to Dart Cherokee, shortly after the Ninth Circuit decided Luther, the Seventh Circuit considered the central legal question in Luther—the removability of Securities Act class actions meeting the removal requirements of CAFA. See Katz v. Gerardi, 552 F.3d 558 (7th Cir. 2009). The Katz court held that class actions meeting the requirements of CAFA, including those asserting claims under the Securities Act, are removable. Id. at 562. In doing so, Katz expressly disagreed with the reasoning in Luther.

22.   In Luther, the court applied the "principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." Luther, 533 F.3d at 1034 (citation omitted). The court

NOTICE OF REMOVAL                                                    Case No. 18-cv-4790

1   reasoned that the Securities Act was "more specific" than CAFA because it "applies only to claims

2   arising under the Securities Act," whereas CAFA "applies to a 'generalized spectrum'" of class

3   actions.  Id.  On the basis that the purported specific statute controls over the more general statute,

4   Luther found that Section 22(a)'s removal bar applied to bar removal of Securities Act claims

5   notwithstanding that CAFA expressly permitted such removal.

6   　　　23.　　The Katz court rejected and exposed this flawed reasoning.  Contrary to Luther's

7   conclusion, the Katz court explained that CAFA is *not* broader than the Securities Act because

8   CAFA applies only to "large, multi-state class actions" while the Securities Act applies to "all

9   securities actions—single-investor suits as well as class actions."  Katz, 552 F.3d at 561; see also

10  SEC v. Glenn W. Turner Enters., Inc., 474 F.2d 476, 481 n.5 (9th Cir. 1973) (noting "[t]he broad

11  purpose of the Securities Act of 1933").

12  　　　24.　　Thus, the Katz court concluded that the language of CAFA itself, "rather than a[ny]

13  canon" of statutory construction, instructs how CAFA "applies to corporate and securities actions."

14  Katz, 552 F.3d at 562.  CAFA itself contains specific, enumerated exceptions to removal

15  jurisdiction that address certain securities actions—none of which applies here—including actions

16  "concerning a covered security," those relating to the internal affairs of a corporation, or those

17  relating to the rights, duties, and obligations relating to or created by or pursuant to any security.

18  Id.  "This [list of exceptions] tells us all we need to know."  Id.  Claims falling within the

19  exceptions are not removable, and all "[o]ther securities class actions are removable if they meet

20  the requirements of" CAFA.  Id.

21  　　　25.　　Straightforward statutory construction of Congress's removal statutes confirms that

22  the holding in Katz is correct and that the holding from Luther should be revisited.  In particular,

23  the general removal statute, 28 U.S.C. § 1441(a)—on which Defendants do *not* rely for removal

24  here—authorizes removal when federal courts have "original jurisdiction" "[e]xcept as otherwise

25  expressly provided by Act of Congress."  28 U.S.C. § 1441(a).  Courts have concluded that this

26  exception language—"[e]xcept as otherwise expressly provided by Act of Congress"—refers to

27  anti-removal statutes such as Section 22(a) and prevents removal of an action when such claims are

28  asserted.  See U.S. Indus., Inc. v. Gregg, 348 F. Supp. 1004, 1015 n.10 (D. Del. 1972), rev'd on

1   other grounds, 540 F.2d 142 (3d Cir. 1976).

2         26.    However, Section 1453—the CAFA removal statute, the statute on which

3   Defendants *do* rely for removal—does *not* include the "[e]xcept as otherwise expressly provided

4   by Act of Congress" language.  See 28 U.S.C. § 1453.  As numerous courts have found, the

5   omission of this language in the CAFA removal statute demonstrates that, unlike with Section

6   1441(a), Congress did not intend anti-removal provisions to bar removal where the action meets

7   the requirements of CAFA.  See Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 106

8   (2d Cir. 2004) (allowing removal of Securities Act claim under 28 U.S.C. § 1452 because that

9   section does not include the exception language); FDIC v. Countrywide Fin. Corp., 2012 WL

10  12897152, at *1 (C.D. Cal. Mar. 20, 2012) (concluding that grant of federal jurisdiction over

11  claims involving FDIC made action removable under Section 1441(b), which at that time provided

12  for removal based on claims arising under federal law, and "trump[ed]" the removal bar in Section

13  22(a) because Section 1441(b) did not then contain exception language like Section 1441(a)).

14  Accordingly, straight forward statutory construction reveals that this action should be removable.

15  United States v. Providence Journal Co., 485 U.S. 693, 704-05 (1988) (citation omitted) (observing

16  that when two statutes included "[e]xcept as otherwise authorized by law," but that "by way of

17  vivid contrast," the third did not, the third statute provided for no exception); Russello v. United

18  States, 464 U.S. 16, 23 (1983) (alteration in original) (citation omitted) ("[W]here Congress

19  includes particular language in one section of a statute but omits it in another section of the same

20  Act, it is generally presumed that Congress acts intentionally and purposely in the disparate

21  inclusion or exclusion.").  The Luther court never considered CAFA's plain language.

22        27.    For these reasons, Defendants respectfully submit that Katz is the correctly reasoned

23  decision, and that, to the extent necessary, Luther should be reconsidered.  Tellingly, the current

24  divide in authority led the author of the district court decision affirmed by the Ninth Circuit in

25  Luther, the Hon. Mariana Pfaelzer, to observe in another case, "Defendants appear to have

26  nonfrivolous arguments for a change in the law due to post-Luther developments."  Pub. Emps.'

27  Ret. Sys. of Miss. v. Morgan Stanley, 605 F. Supp. 2d 1073, 1075 n.1 (C.D. Cal. 2009).  See also 2

28  McLaughlin on Class Actions § 12:6 (14th ed. 2017) (collecting authorities and concluding Katz's

NOTICE OF REMOVAL                                                            Case No. 18-cv-4790

1  conclusion is correct).

2  **IV.     THIS REMOVAL NOTICE IS TIMELY AND SATISFIES ALL PREREQUISITES.**

3       28.     Plaintiff filed the above-captioned putative class action on July 3, 2018 in the

4  Superior Court of the State of California, County of San Mateo, as case number 18-CIV-03461.

5  The first Defendant to be served, Ripple, was served on July 9, 2018.  This Notice of Removal is

6  timely because it has been filed within thirty days of Plaintiff's earliest purported service of the

7  Complaint.  <u>See</u> 28 U.S.C. § 1446.

8       29.     No previous application has been made by the Defendants for this or similar relief.

9       30.     Written notice of the filing of this Notice of Removal will be given to the adverse

10  parties and state court as required by § 1446(d).

11  DATED: August 8, 2018

12                                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

13                          By:  _____/s/Peter B. Morrison_____
                                        Peter B. Morrison
14                                      Attorney for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28