# EXHIBIT A

*CERTIFIED COPY*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable PHYLLIS J. HAMILTON, Judge

| | | |
|---|---|---|
| RYAN COFFEY, individually and on behalf of all others similarly situated, | ) ) ) ) | **Plaintiff's Motion to Remand** |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. C 18-03286 PJH |
| RIPPLE LABS INC., et al., | ) ) | Pages 1 - 29 |
| Defendants. | ) ) | Oakland, California Wednesday, August 1, 2018 |

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

APPEARANCES:

For Plaintiff:           Taylor-Copeland Law
                         501 W. Broadway, Suite 800
                         San Diego, California  92101
                    BY:  JAMES Q. TAYLOR-COPELAND,
                         ATTORNEY AT LAW



For Defendants:          Skadden, Arps, Slate
                          Meagher & Flom, LLP
                         300 South Grand Avenue, Suite 3400
                         Los Angeles, California  90071
                    BY:  PETER B. MORRISON, ATTORNEY AT LAW



Reported By:        Raynee H. Mercado, CSR No. 8258

    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

```
 1    Wednesday, August 1, 2018                          9:03 a.m.
 2                     P R O C E E D I N G S
 3         THE CLERK:  Calling civil case 18-03286-PJH, Coffey
 4    versus Ripple Labs, Inc., et al.
 5       Counsel, please step forward and state your appearances.
 6         MR. TAYLOR-COPELAND:  Good morning, Your Honor.
 7    James Taylor-Copeland on behalf of plaintiff Ryan Coffey.
 8         THE COURT:  Good morning.
 9         MR. MORRISON:  Morning, Your Honor.  Peter Morrison
10    with Skadden Arps on behalf of defendants.
11         THE COURT:  All right.  Good morning.
12         MR. MORRISON:  Morning.
13         THE COURT:  All right.  This matter is on for
14    plaintiff's motion to remand the matter.
15       Where are you going?
16       Bring your papers --
17         MR. MORRISON:  Just grab my papers, Your Honor.
18         THE COURT:  Okay.
19       Okay.  So this is on for hearing on plaintiff's motion to
20    remand.  Did you wish to make a presentation this morning,
21    Mr. Copeland?
22         MR. TAYLOR-COPELAND:  Yes, Your Honor.
23         THE COURT:  All right.
24       Let me just tell you what the difficulty I'm having with
25    the case is.
```

1      **MR. TAYLOR-COPELAND:**  Sure.

2      **THE COURT:**  All right.  You've got both state claims

3  and federal claims.  <mark>There doesn't appear to be any dispute</mark>

4  <mark>between you that if your lawsuit had alleged solely claims</mark>

5  <mark>arising out of the Securities Act, it wouldn't be removable</mark>

6  <mark>because the anti-removal bar.</mark>

7      If your case had alleged claims arising under state

8  court -- under state law, they would be removable.  So the

9  question is does the combination of the two -- I mean, I

10  frankly don't know why you even put in the state claims if you

11  wanted to stay in state court because it's absolutely clear,

12  as far as I can see, there is no case, not even *Luther* that

13  addresses the exact situation we have here where there are

14  what otherwise would be removable state claims.

15      **MR. TAYLOR-COPELAND:**  Sure, Your Honor.

16      **THE COURT:**  All right.  So that's the dilemma.

17      **MR. TAYLOR-COPELAND:**  And I understand that.  And the

18  reason we included state law claims is because California has

19  a different test for what constitutes a security than the

20  federal.  How we test some things that would be securities

21  under federal law would not be securities in California and

22  vice versa.

23      And I think -- I'm in complete agreement with you.  The

24  sole question before the court today, given *Luther*'s decision,

25  that the Securities Acts removal bar trumps CAFA is whether

1    the Securities Acts removal bar --

2              **THE COURT:**  But *Luther* didn't involve state claims.

3              **MR. TAYLOR-COPELAND:**  That's correct.

4              **THE COURT:**  So it's not entirely clear that that

5    reasoning would apply to this case.

6              **MR. TAYLOR-COPELAND:**  Well, I think the only question

7    before the court is whether the Securities Acts removal bar

8    precludes removal of cases that join Securities Act claims and

9    state law claims.  And I think the answer to that is supplied

10   by the language in the removal bar itself, which states that

11   no case arising under the subchapter shall be removed.

12       And if the court needs to look past the plain language of

13   the Securities Act, the limited exception to the Act provides

14   additional evidence that the bar precludes removal of entire

15   cases and not just individual claims.

16             **THE COURT:**  You're talking about 16(d)?

17             **MR. TAYLOR-COPELAND:**  No, I'm talking --

18             **THE COURT:**  16(c)?

19             **MR. TAYLOR-COPELAND:**  So in SLUSA, as -- as the

20   court -- the Supreme Court noted *Cyan*, Congress added in this

21   "except as provided in Section 77p(c)," exception to the

22   removal bar.

23       So now the removal bar states, "Except as provided in

24   Section 77p(c) of this title, no case arising under the

25   subchapter shall be removed."

1    Section 77p(c) in turn --

2          THE COURT:  That's 16(c), right?  That's what I've

3    been referring to as "16(c)."

4          MR. TAYLOR-COPELAND:  It may be -- yes.  It may be

5    securities --

6                    (Simultaneous colloquy.)

7          THE COURT:  I think it is.

8          MR. TAYLOR-COPELAND:  -- 16(c) of the Securities Act.

9          THE COURT:  Okay.

10         MR. TAYLOR-COPELAND:  And then that in turn refers to

11   section 77(b), which would be 16(b), which identifies the

12   covered class actions that may be removed.

13       And now if, as defendants contend, the Securities Act

14   barred only removal of individual claims, there would have

15   been no reason to include this "except" language in -- in

16   amending the removal bar because those claims would have been

17   removable anyway under section 77p(c) or 16(c), which says

18   that the claims identified in section 16(b) are removable.

19       And I think what this further evidences is that when

20   Congress intends for cases arising out of the Securities Act

21   to be removable, it says so explicitly.

22       You know, there would have been a conflict between Section

23   77 -- 77p(c) or 16(c), and the removal bar, but Congress

24   explicitly identified that and allowed for removal because it

25   wanted to allow removal in that case.

1      **THE COURT:**   Hmm.

2      Okay.

3      All right.  You state that position in your papers.

4  Anything else?

5      **MR. TAYLOR-COPELAND:**   Well, I think that, you know,

6  the -- the defendant's analogy to general diversity further

7  reinforces this idea that where Congress wants to allow

8  removal in the face of an anti-removal statute.  It does so

9  explicitly.

10     They identify Section 1441(c), which until 1990 addressed

11  where federal courts could exercise jurisdiction where they

12  had diversity mixed with a non-removable claim.  And that

13  subject chapter stated that removal was only proper where the

14  non-removable claim was separate and independent from the

15  Securities Act claim.

16     You know, once again, this shows that Congress understands

17  the potential for conflict between diversity jurisdiction and

18  its non-removal -- non-removal statutes and that where it

19  intends to allow removal, it does so explicitly.

20     **THE COURT:**   Hmm.  Okay.

21     All right.  Response?

22     **MR. MORRISON:**   Thank you, Your Honor.

23     Let me start here.  Your honor's exactly correct.

24  *Luther* --

25     **THE COURT:**   Well, I haven't made any --

```
 1                      (Simultaneous colloquy.)

 2           MR. MORRISON:  Luther's -- you're exactly correct,

 3   that Luther does not cover the situation.

 4           THE COURT:  Right.

 5           MR. MORRISON:  What plaintiff is asking for is an

 6   expansion of Luther that is unwarranted and not found anywhere

 7   in the law.

 8      Given that Luther doesn't answer the question, simple

 9   statutory construction does answer the question.  And I'd like

10   to take a minute to walk the court through simple statutory

11   construction about why the right answer is for this entire

12   case to stay in federal court.

13      In order to analyze an issue that's an open question, you

14   have to start, Your Honor, with the removal statutes

15   themselves.  That's the basis for removal jurisdiction.

16      The statute on which we are relying is CAFA removal, 1453.

17   There's no debate that everything in this case satisfies all

18   of the requirements of 1453.  There's over a hundred class

19   members, not disputed.  Over $5 million in dispute, not

20   disputed.  Minimal diversity, not disputed.  No exception

21   applies, not disputed.  We satisfy CAFA removal under 1453,

22   period, full stop.

23      Now the question is in cases involving both a federal '33

24   Act claim and a state law claim, does the removal bar in 22(a)

25   serve to bar removal of all of it, not just the '33 Act claim.
```

1   The answer to that question, Your Honor, is when you compare

2   what Congress did in 1453 with what Congress did in the

3   general removal statute in 1441(a).  1441(a) contains a clause

4   which is extraordinarily significant.

5          **THE COURT:**  Right.

6          **MR. MORRISON:**  That -- that statute, the general

7   removal statute says, "except as otherwise provided by an act

8   of Congress."  Okay?

9      Court after court interprets that language to refer to

10  removal bars.  The point of that language is you can remove

11  except as otherwise provided by Congress.  And what does that

12  mean?  It means if Congress over here, like in 22(a), said you

13  can't remove, the general removal statute in 1441(a) is going

14  to defer to the removal bar.  That's the language.

15     And, in fact, plaintiff's own case in *Nexbank* -- this is a

16  case that he cites in his reply at seven -- says exactly that.

17  It says the prohibition of removal under the '33 Act is an

18  exception otherwise provided by law that is contemplated by

19  the general removal statute under 1441(a).

20     So there's no question that "except as otherwise provided

21  by Congress," even based on the case law he cites, refers to

22  removal bars.

23     Now look at 1453.  That language "except as otherwise

24  provided by Congress" -- that would otherwise refer deference

25  to removal bars is nowhere to be found 1453.  By definition,

1    Your Honor, that means that the removal bar doesn't apply to

2    CAFA removal by simple statutory construction.

3        We cite in our papers, Your Honor, no fewer than 12

4    cases --

5            **THE COURT:**  And in addition, 1453 has its own

6    specified exceptions.

7            **MR. MORRISON:**  Correct.  And I'm going to get that.

8        So not only do we cite 12 cases that support this

9    proposition, including two U.S. Supreme Court cases, Your

10   Honor.  And just briefly for the record, the *Providence* case

11   says -- it observes, "when two statutes included," quote,

12   "'except as otherwise authored by law' language, but that,"

13   quote, "by way of vivid contrast," end quote, "the third did

14   not.  The third statute provided for no exception."  That's

15   exactly this case.

16       The *Russello* case, United States Supreme Court, Your

17   Honor, and it's a quote from the case, where Congress includes

18   particular language in one section of a statute but omits it

19   in another section of the same act, it is generally presumed

20   that Congress acts intentionally and purposefully in the

21   disparate inclusion or exclusion of the language.

22       So there's no question that Congress's choice to include

23   the "except as otherwise provided by act of Congress" language

24   in 1441(a) meant deference to removal bars.

25           By not including in it 1453, there's no deference to

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1  removal bars, which means if we satisfy 1453, we stay in

2  federal court.

3      Want to make one more point on that, Your Honor.  And then

4  if it's okay, I'd like to respond to a few arguments --

5          **THE COURT:**  There's plenty of time.

6          **MR. MORRISON:**  Thank you.

7          **THE COURT:**  You don't have to rush.

8          **MR. MORRISON:**  Thank you.

9      Let me make one other point on my -- the statutory

10  construction argument.

11      Remember what CAFA did.  CAFA did two things.  The first

12  thing it did was it expanded diversity jurisdiction, original

13  diversity jurisdiction under 1332.  It added subsection D.

14  Okay?

15      If Congress intended for removal bars to apply to the

16  expanded diversity jurisdiction, all it had to do was say,

17  we're going to amend 1332(d), and expand diversity

18  jurisdiction but we're going to leave removal jurisdiction

19  exactly the way it is.  And then if you want to remove, you

20  can remove under 1441(a), the general removal statute.  The

21  "except as otherwise Congress" language would apply and fit

22  within the expanded diversity jurisdiction, great.  But if

23  there's a removal bar, you're out of luck.

24      But that's not what they did.  Not only did they expand

25  original diversity jurisdiction.  They then added an entirely

1   new statute for CAFA removal jurisdiction.

2       The only reason to add an additional statute under 1453

3   without the "except as otherwise provided" language would be

4   to expand federal removal jurisdiction.  Otherwise 1453 would

5   be completely superfluous.  You wouldn't need it.

6       Beyond that, and the point that Your Honor made is,

7   Congress was express about the exceptions to CAFA removal.

8   There's three of them.  None of those three show any deference

9   to removal bars.

10      So if *Luther* doesn't answer the question, in order to

11  analyze the issue, you just go to simple statutory

12  construction.  There is no reading of this that would permit

13  the removal bar to apply in this instance to a CAFA removal.

14      Otherwise the "except as otherwise provided by an act of

15  Congress" language would be completely meaningless.

16          **THE COURT:**  Now, of course, *Luther*, was a CAFA

17  removal, wasn't it?

18          **MR. MORRISON:**  It was.  *Luther* was a CAFA removal,

19  yes.

20      Well, let me address -- let me turn to addressing some of

21  the remarks, and I will cover the *Luther* case, Your Honor.

22      So it sounds like we're in agreement that *Luther* dealt

23  with a '33 Act claim and not '33 Act and state law claims.

24          **THE COURT:**  And in fact, in the opinion, it says

25  explicitly on several occasions "this case involves solely

1    Securities Act claims."

2         **MR. MORRISON:**   In fact, I have the quote here.   It

3    says, Section 22(a), the removal bar more precisely applies

4    only to claims under the '33 Act."   So on its own terms, it

5    doesn't apply to state law claims.

6         But I'll give you another rationale for why *Luther* can't

7    be expanded here.   The basis of *Luther*, Your Honor, was that

8    the Securities Act is more narrow and precise than CAFA.

9         Now, reading between the lines, what *Luther* is saying, the

10   '33 Act applies to securities cases, and CAFA applies across

11   the board.

12        The expansion of *Luther* that plaintiff seeks here would be

13   to apply the removal bar based on CAFA, to not just '33 Act

14   claims but any other claim brought along with a '33 Act claim.

15        If that were the case, Your Honor, it would completely

16   undermine the rationale of *Luther* because under that theory, I

17   could bring a '33 Act claim, and I could bring 99 other state

18   law claim (sic) that other would be removable, and then none

19   of them would be removable based on *Luther*.

20        If that were the case, the removal bar wouldn't be more

21   narrow than CAFA, it would be way more broad.   And so this

22   idea that the removal bar is more narrow and CAFA is more

23   broad would be completely out the window.   So the expansion of

24   *Luther* that he seeks is not only contrary to the express

25   language of *Luther*; it would completely undermine the

1      rationale underpinning *Luther*.

2          And, look, Your Honor, given post-*Luther* developments, far

3      from an expansion of *Luther*, there are good arguments that

4      *Luther* should be limited at a minimum, has been abrogated, or

5      should be overturned.

6          *Dark Cherokee* came out after *Luther*.  The *Katz* decision in

7      the Seventh Circuit completely undermines the rationale in

8      *Luther*.  And an expansion of *Luther* in the way that plaintiff

9      asks the court to expand it would completely undermine *Luther*.

10          Now, let me address couple other points.

11              **THE COURT:**  Of course, this authority -- this court

12      has no authority to overturn *Luther*.  You're simply asking the

13      court not to expand --

14              **MR. MORRISON:**  Correct, Your Honor.

15          We believe that there is a good argument that *Luther*'s

16      been abrogated by *Dark Cherokee* and that in instance, the

17      court need not follow it as precedent, which I'm happy to

18      discuss and we've laid in our papers.

19          But yes, this court doesn't have the ability to overturn

20      it.

21              **THE COURT:**  The -- My question is whether or not

22      *Luther* even applies in this situation.

23              **MR. MORRISON:**  We don't think that it does, Your

24      Honor.

25              **THE COURT:**  Because of the hybrid nature --

1              **MR. MORRISON:**  And --

2              **THE COURT:**  -- or the mixed nature of --

3              **MR. MORRISON:**  And because of the statutory

4    construction argument that I laid out for the court.  That

5    statutory construction argument, Your Honor, isn't found

6    anywhere in *Luther*, and *Luther* doesn't address the hybrid

7    situation.

8         And as I said, absent controlling precedent on this issue,

9    you have to go to the source, which are the statutes.

10        And the only way to read 1453 and 1441(a) together would

11   be to apply removal bars to the general removal state but not

12   apply removal bars to 1454 under CAFA.

13        Otherwise, the "except as otherwise provided by Congress"

14   language is superfluous, which isn't allowed.

15        Let me address, Your Honor, plaintiff's argument about the

16   language of the removal bar itself.  If I can get to my notes.

17        Counsel said that one way to look at this case, Your

18   Honor, would be to look at the language of the removal bar and

19   that the removal bar says "no case arising under this chapter

20   shall be removed" and, therefore, it applies across the board.

21        Well, it's "case arising under this chapter," not just

22   "case," to begin with.  But he doesn't cite a single case that

23   interprets the word "case" in the removal bar in that manner.

24        And in fact, we cite a case, the *Emrich vs. Touche Ross*

25   decision, which is a Ninth Circuit decision, that puts that

1    argument to bed.  Right?

2        So just to lay it out, what he argued, Your Honor was

3    because the removal bar says "case," by definition, it applies

4    to "the case" so long as it includes a '33 Act claim and no

5    matter whatever else it includes.  Not only would that

6    rational undermine *Luther*, but there's -- no case says that.

7        And, in fact, the Ninth Circuit has already found

8    differently.  In the -- in the *Emrich* versus Touche Ross case,

9    Ninth Circuit 1988, plaintiff asserted a RICO claim, state law

10   claims, and a '33 Act claim.  And the Ninth Circuit looked at

11   each case individual -- individually.

12       The Ninth Circuit did not say, Well, there's a '33 Act

13   claim; therefore, none of these claims are removable.

14   Actually what happened was it kept the RICO and state law

15   claims in federal court but remanded the '33 Act claim.

16       Now, I'm not arguing for you to sever the claims here,

17   Your Honor.  There's no ability to sever the claims because

18   the removal statutes in existence at the time of *Emrich*

19   permitted that type of severance.  Here, those statutes are no

20   longer on the books, and CAFA didn't exist at the time.

21       But what did exist at the time of the *Emrich* case was the

22   removal bar in 22(a).  And interpreting the removal bar in

23   22(a) and the word "case" in the removal bar of 22(a), the

24   Ninth Circuit, controlling authority, Your Honor, looked at

25   each individual claim and didn't just say, "if you have a '33

1   Act claim, then not a single claim in this case is removable."

2   So that argument -- that statutory language argument he makes

3   has been rejected by the Ninth Circuit.

4       And I need to just make a quick point on the *Emrich* case,

5   Your Honor, because unfortunately plaintiff miscites it in his

6   reply brief.  And so I need to make a record of this.  Because

7   we don't have a chance to respond to the reply.

8       In his reply brief when discussing *Emrich*, the brief says,

9   and I'm quoting, "in fact, examination of defendants own

10  authority reveals that federal courts have consistently

11  remanded cases containing Securities Act claims and related

12  claims that would otherwise be removable, and then he cites

13  *Emrich*.  *Emrich* doesn't say that at all.  *Emrich* keeps the

14  RICO case in federal court, keeps the state law claims in

15  federal court.  So that citation is not correct.

16      And then he doubles down on that, Your Honor, again, on

17  page 6, with a parenthetical to *Emrich* that says "remanding

18  case containing RICO claim and Securities Act claims," that

19  it's just not accurate and so I want to make sure the court's

20  aware of it.

21      Last and final -- well, there's a couple little things I

22  can respond to.  But his third major argument -- so his first

23  argument is *Luther*.

24          **THE COURT:**  Are you taking the position that there

25  isn't indeed any authority for the remand -- for the remand in

```
1   a situation such as this where it's a mixed case?

2           MR. MORRISON:  I am not aware of a case that remands

3   in this situation Your Honor.  Have I read the entire F.Supp?

4   I can't say that I have so I don't want to make a

5   representation that there is no case.  I'm not aware of one.

6           THE COURT:  And none was cited --

7           MR. MORRISON:  And none were cited --

8                   (Simultaneous colloquy.)

9           MR. MORRISON:  -- Your Honor, I can tell you this.

10  We scoured the law to see if there's a case, and we couldn't

11  find one.  And --

12          MR. TAYLOR-COPELAND:  Your Honor, there also are no

13  cases --

14          THE COURT:  Hold on.  You'll get plenty of time to

15  respond.

16      Okay.  It's his turn --

17          MR. MORRISON:  Thank you, Your Honor.  If I may just

18  grab a little more water.

19      There are cases, however, that go the other way.  And we

20  cite them in our -- in our papers, so I can give you a few

21  examples if that's helpful.

22          THE COURT:  If they're in your papers, I don't need

23  you to --

24          MR. MORRISON:  Okay.  Sure.

25      Let me address now the argument that counsel made.
```

1    Counsel said CAFA removal is not available because only SLUSA

2    removal is available.  And there was a discussion about 16(c)

3    and had Congress wanted to permit removal, they would have

4    amended the removal bar differently.

5        And there's a entire section in both the -- his moving

6    brief and his reply brief that one of the reasons why CAFA

7    removal is not available is because when you have a securities

8    case at play -- a Securities Act claim at play, the only

9    avenue to removal is through the removal bar carve-out in

10   SLUSA and you cannot go the CAFA route.  That's wrong as a

11   matter of law.

12       So the discussion that counsel just had with the court --

13           THE COURT:  Well --

14           MR. MORRISON:  -- about SLUSA removal is

15   inapplicable.

16           THE COURT:  An anti-removal bar that applies to one

17   removal statute wouldn't necessarily apply to all removal bar

18   removal statutes.

19           MR. MORRISON:  That's my point, Your Honor.  And

20   if -- if that's clear, then I don't need to address it.

21   That's -- he -- plaintiff's counsel in his papers believes

22   that because you have a removal bar in the '33 Act, unless you

23   can find a path up through the removal bar on the SLUSA side

24   of things, you can't remove the case, and you have to ignore

25   CAFA and 1453.  That's just not accurate.  There's not a

1   single case that stands for that proposition.

2              **THE COURT:**  Well, there are multiple ways to remove a

3   case --

4              **MR. MORRISON:**  Correct.

5                         (Simultaneous colloquy.)

6              **THE COURT:**  -- that permit it, and you don't have to

7   meet all of them in order to remove a case.

8              **MR. MORRISON:**  Correct.

9              **THE COURT:**  You just have to meet one of them.

10             **MR. MORRISON:**  That's right.

11      Okay.  Fair enough.  So I will -- I'll move on from there.

12      Now, I think with that, unless the court has questions --

13             **THE COURT:**  Well, just about the -- the federal

14   claims.

15             **MR. MORRISON:**  Yes, Your Honor.

16             **THE COURT:**  What's your position with regard to

17   the -- I'm having some difficulty understanding exactly -- you

18   agree that the state claims are removable under CAFA.

19             **MR. MORRISON:**  Correct.

20             **THE COURT:**  Correct?

21             **MR. MORRISON:**  Yes.

22             **THE COURT:**  And is your argument that the federal

23   claims are removal (sic) because under original jurisdiction,

24   if one claim is removable, the whole case is removable?  Or

25   are you taking the position that supplement jurisdiction

1    applies?  What?  What?

2            **MR. MORRISON:**  No.  The position is all of the claims

3    are recommendable under CAFA, the '33 Act claim and the state

4    law claims.  The removal bar doesn't apply in the CAFA context

5    where you have both removable and non-removable claims because

6    of the statutory construction argument I made.

7            **THE COURT:**  Um-hmm.  Okay.

8            **MR. MORRISON:**  Now -- and I'll -- let me say -- let

9    me add this, Your Honor.  This case is far better than some of

10    the other Supreme Court cases that have dealt with similar

11    situations.  So there was a big debate in the law about what

12    "supplemental jurisdiction" meant for a while, and there

13    were -- there are a number of cases, and we cite them, where

14    you had clearly removable claims and then you had other claims

15    at play that were not removable at all because, say, they

16    didn't meet the monetary threshold for diversity removal, or

17    because there was not complete diversity.

18       I'm thinking of a situation where you could have a federal

19    claim under the '34 Act and a derivative claim, state law,

20    that wouldn't otherwise be removable.  And the question was if

21    one is removable and one is not, what do you do?

22       And Congress passed the supplemental jurisdiction statute

23    to say you have to keep cases together.  In that instance,

24    Your Honor, you had one case that clearly had original -- one

25    claim, clear original jurisdiction, and another claim with no

1    jurisdiction.

2         Here, this case is far better.  There's no question that

3    the state law claims have jurisdiction.  And the federal

4    claims have federal question jurisdiction.  Or supplemental

5    jurisdiction, and they certainly have CAFA jurisdiction.

6         So if Congress went out of its way to ensure supplemental

7    jurisdiction over claims that doesn't have any business being

8    in federal court, certainly the '33 Act claims with multiple

9    avenues to get to -- get to federal court should be kept with

10   the clearly independently removable state law claims,

11   particularly because the only way to give effect to that

12   "except as otherwise provided by act of Congress" language in

13   1441(a) Would be not to apply the removal bar where that

14   language does not exist in 1453.

15            **THE COURT:**  Okay.

16            **MR. MORRISON:**  Thank you, Your Honor.

17            **THE COURT:**  All right.  Response?

18            **MR. TAYLOR-COPELAND:**  Yes, Your Honor.

19       The statutory construction argument that the defendants

20   just made is exactly the argument that the Ninth Circuit

21   rejected in *Luther*.  It was the argument that was raised in

22   the district court and then again on appeal and rejected by

23   the Ninth Circuit.

24         And then going on to the -- the wording of *Luther*,

25   defendants have cherry-picked certain instances in which

1    *Luther* refers to claims, but there's also a number of

2    instances in which the *Luther* case refers to the Securities

3    Act precluding removal of entire cases.

4         In fact, *Luther* states, Section 22(a), quote, strictly

5    forbids removal of cases brought in state court and asserting

6    claims under the Act.

7         Plaintiff's position is that CAFA doesn't allow removal of

8    individual claims.  By its own wording, CAFA allows removal of

9    other entire class actions or not.  And the Ninth Circuit

10   recognized that there's a conflict between CAFA and the

11   Securities Acts removal bar.  And the Ninth Circuit determined

12   that the Securities Acts removal bar trumps CAFA, and despite

13   what defendants are saying --

14        **THE COURT:**  Do you --

15        **MR. TAYLOR-COPELAND:**  -- decision is controlling.

16        **THE COURT:**  Do you think that it makes a difference,

17   though, that the *Luther* cases didn't include state claims as

18   your case does?

19        **MR. TAYLOR-COPELAND:**  I don't think it does.

20        **THE COURT:**  Why not?

21        **MR. TAYLOR-COPELAND:**  I think -- well, because the

22   Securities Act removal bar precludes removal of cases.

23        **THE COURT:**  Any case that has a Securities Act claim,

24   even if there are a hundred state claims?

25        **MR. TAYLOR-COPELAND:**  Well, Your Honor, I think, one,

1   this isn't a case in which there are a hundred state claims.

2   This is a case in which there are state securities claims that

3   are closely tied to the Securities Act claim.

4       There's no allegation in this case that the Securities Act

5   claim was somehow brought just as a way to -- to use the

6   removal bar.  So -- but yes, I would say that it does,

7   especially when those state law claims are related to the

8   Securities Act claim.

9       And, in fact, the state securities claims can in some way

10  be said to arise directly out of the Securities Act itself.

11  California's Corporation Code was enacted following up on the

12  Securities Act.  And particularly its registration provisions

13  borrow heavily from the Securities Act.

14          **THE COURT:**  Um-hmm.  Okay.

15          **MR. TAYLOR-COPELAND:**  And then if -- if we could

16  circle back to this *Emrich v. Touche* case in the Ninth

17  Circuit, defendants are somehow suggesting that the court

18  there decided that the case language doesn't mean entire

19  cases.

20      What they're neglecting to inform the court is that the

21  court there was dealing with a statute which went through when

22  individual claims were removable when paired with other

23  individual claims.

24      So this is, I think, 1441(a) after 1441(c) was -- was

25  changed.  But you -- that sort of is the language where cases

1    were allowed to be removed only when they were separate and

2    independent from the non-removable claim.

3        And, you know, if -- if defendants want to perform an

4    analysis of whether this case is separate and -- the state law

5    claims are separate and independent, I think certainly they're

6    not in this case.  They -- they all arise out of the same

7    wrong, and that's defendant' sale of unregistered XRP

8    securities.

9            **THE COURT:**  Um-hmm.  Okay.

10                   (Pause in the proceedings.)

11           **MR. TAYLOR-COPELAND:**  That's all I have, Your Honor.

12           **THE COURT:**  Okay.

13           **MR. MORRISON:**  May I make one quick point, Your

14    Honor?

15           **THE COURT:**  Sure.

16           **MR. MORRISON:**  I'll be brief.

17           **THE COURT:**  There's no rush.

18           **MR. MORRISON:**  Okay.  Thank you, Your Honor.

19        Let's say that this is a close case, and the court is

20    struggling with exactly what to do here.  There --

21           **THE COURT:**  It is and it is.

22           **MR. MORRISON:**  Sounds it.

23        And so I wanted to try to be helpful.  There are

24    tie-breakers in the law in this context, Your Honor.  *Dark*

25    *Cherokee* and the Supreme Court has said that when you apply

1    CAFA, you apply it broadly and that there is no presumption

2    against removal.

3         If anything, there is a presumption in favor of removal

4    because the entire policy behind CAFA is to have large,

5    important, nationwide class actions stay in federal court.

6         That's exactly what this is, Your Honor.  It's over --

7    allegedly over $300 million at issue.  It's a nationwide class

8    action and is an issue of first impression about --

9              **THE COURT:**  Actually, it could be an international

10   class action.

11             **MR. MORRISON:**  That's correct.  And it's -- it's --

12   issue of first impression about how virtual currency should be

13   regulated.  That's number one.

14        So CAFA alone and the Supreme Court tells the court how to

15   break ties.  That's number one.

16        Number two is burden.  Once we show that we've satisfied

17   removal jurisdiction under CAFA -- and *Luther* says this --

18   we've borne our burden to be in federal court.  We've done

19   that.  There's no question we satisfy the requirements of

20   CAFA.  Once we do that, plaintiff bears the burden to show

21   that an exception or the removal bar applies.

22        So given that all ties under CAFA get broken in favor of

23   federal court and given that he bears the burden of showing

24   why that shouldn't be the case, if it's a close case in Your

25   Honor's mind, you have to keep this case in federal court,

1    Your Honor.

2        Thank you.

3        **MR. TAYLOR-COPELAND:**  Could I briefly respond to

4    that?

5        **THE COURT:**  Sure.

6        **MR. TAYLOR-COPELAND:**  Yeah, the -- the purpose of

7    CAFA was to keep certain high-dollar class actions in federal

8    court.  But the purpose of the Securities Acts removal bar is

9    to give plaintiffs their choice of forum and venue in

10   securities cases.

11       Removal bars are very rare.  Congress included that

12   removal bar in the Securities Act in 1933.  Congress amended

13   the Securities Act with a view towards securities class

14   actions in 1995 and 1999.  And it even carved out certain

15   language about when securities class actions could be removed

16   to federal court.

17       None of those amendments allowed for removal of securities

18   cases.  So our position is that the Securities Acts removal

19   bar, and this is what the Ninth Circuit says in *Luther*, is the

20   more specific and focused statute.

21       Viewed in the context of the PSLRA and SLUSA amendments,

22   it focuses specifically only when removal of Securities Act or

23   securities class actions is permissible.

24       And then to address the argument regarding *Dark Cherokee*,

25   the *Dark Cherokee* court considered the single question, and

1    that was to assert the amount in controversy adequately pled

2    in the removal notice, does it suffice to allege the requisite

3    amount plausibly or must the defendant incorporate into the

4    notice of removal evidence supporting the allegation?

5         The Supreme Court decided that that answer was supplied by

6    the statute itself, and then notes in passing that no

7    presumption against removal attaches to CAFA.

8         The Supreme Court wasn't addressing a situation like this,

9    like the one addressed by *Luther* where a (sic) anti-removal

10   statute conflicts with CAFA and diversity jurisdiction.

11              **THE COURT:**  Okay.

12              **MR. TAYLOR-COPELAND:**  So --

13              **THE COURT:**  Are you taking the position that even if

14   the state claims were dismissed, that the case would still be

15   removable?

16              **MR. MORRISON:**  Yes, Your Honor, because courts

17   adjudicate removal under the law as the complaint exists at

18   the time of removal.  So even if we were to stay in federal

19   court and the state claims would be dismissed because of the

20   time of removal they were there, it stays in federal court.

21              **THE COURT:**  Okay.  But otherwise, you would agree

22   that the anti-removal bar would apply --

23              **MR. MORRISON:**  If --

24              **THE COURT:**  -- if they had been dismissed in state

25   court.

1          **MR. MORRISON:**  If -- Take a hypothetical where

2     counsel only had brought '33 Act claims, then you would be in

3     a situation where *Luther* may be more applicable here.  We

4     believe, Your Honor, that there is a good argument for removal

5     even if that situation given *Dark Cherokee*, given *Katz* --

6          **THE COURT:**  Sure.  But that's not --

7                    (Simultaneous colloquy.)

8          **THE COURT:**  That's not a strong --

9                    (Simultaneous colloquy.)

10         **THE COURT:**  -- a strong argument.

11         **MR. MORRISON:**  I think the existence of the state law

12    claims make this very different from *Luther*, but I don't want

13    to say to you that we wouldn't remove even if this were

14    different because we think that should the Ninth Circuit get a

15    chance, they're going to revisit *Luther* and come out

16    differently.

17         **THE COURT:**  Okay.  All right.  Well, it wouldn't

18    present a dilemma for me.  I would -- I'd remand it,

19    obviously.  Yeah.

20        But in any event, I think this is a difficult question,

21    and I think it's sort of a complicated question.  And if I

22    were to deny the motion to remand and keep the case here, I

23    would be inclined to certify the question to the Ninth Circuit

24    on the remand because I'd hate to adjudicate a case that is

25    likely to be as complicated as this case could be if, in fact,

1    it really does belong in state court.

2        What do you think about that?

3        Is that a question you would -- if you were to lose your

4    motion today, is that something that you would like to pursue,

5    an interlocutory appeal, if the Ninth Circuit were willing to

6    hear it.

7             **MR. TAYLOR-COPELAND:**  It's certainly something that

8    we would consider if we lost this motion today, yes.

9             **THE COURT:**  Okay.

10        All right.  Well, I'm still thinking about it.

11        Anything else?

12            **MR. MORRISON:**  Not from me, Your Honor.

13            **MR. TAYLOR-COPELAND:**  No.

14            **THE COURT:**  All right.  Matter stands submitted.

15        Thank you.

16            **MR. TAYLOR-COPELAND:**  Thank you.

17            **MR. MORRISON:**  Thank you very much, Your Honor.

18             (Proceedings were concluded at 9:39 A.M.)

19                          --o0o--

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

          I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled matter.
I further certify that I am neither counsel for, related to,
nor employed by any of the parties to the action in which this
hearing was taken, and further that I am not financially nor
otherwise interested in the outcome of the action.


                    _____

              Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

                        Sunday, August 12, 2018


*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*