# EXHIBIT 1

1   ROBBINS ARROYO LLP
    BRIAN J. ROBBINS (190264)
2   STEPHEN J. ODDO (174828)
    ERIC M. CARRINO (310765)
3   600 B Street, Suite 1900
    San Diego, CA 92101
4   Telephone: (619) 525-3990
    Facsimile: (619) 525-3991
5   E-mail: brobbins@robbinsarroyo.com
          soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7   Attorneys for Plaintiff

**FILED**
SAN MATEO COUNTY

MAY 22 2018

Clerk of the Superior Court
By _____
        DEPUTY CLERK

8       SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF SAN MATEO

10   MARILYN CLARK, Individually and on   )   Case No.   **18CIV02583**
     Behalf of All Others Similarly Situated,   )
11                          )   **CLASS ACTION**
                        Plaintiff,   )
12                          )   COMPLAINT FOR VIOLATIONS OF
           v.                    )   THE SECURITIES ACT OF 1933
13                          )
    MICRO FOCUS INTERNATIONAL PLC,   )
14   CHRISTOPHER HSU,               )
    STEPHEN MURDOCH,             )
15   MIKE PHILLIPS,                 )
    KEVIN LOOSEMORE,             )
16   NILS BRAUCKMANN,            )
    KAREN SLATFORD,             )
17   RICHARD ATKINS,             )
    AMANDA BROWN,              )
18   SILKE SCHEIBER,              )
    DARREN ROOS,               )
19   GISELLE MANON,              )
    JOHN SCHULTZ, and           )
20   DOES 1-25, Inclusive,          )
                         )
21                Defendants.   )   **DEMAND FOR JURY TRIAL**

18-CIV-02583
CMP
Complaint
1164870

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

## INTRODUCTION

1.      Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by defendant Micro Focus International plc ("Micro Focus" or the "Company"), as well as media and analyst reports about the Company and Company press releases.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## SUMMARY OF THE ACTION

2.      Plaintiff brings this securities class action on behalf of all persons who purchased or otherwise acquired Micro Focus American Depositary Shares ("ADSs") pursuant or traceable to Micro Focus's Registration Statement and Prospectus (collectively, the "Offering Documents") issued in connection with the merger of the Company with Hewlett Packard Enterprise Company ("HPE"), and their subsidiaries (the "Merger").  Pursuant to the Merger, Micro Focus combined with the software business segment of HPE ("HPE Software").  This action asserts claims under sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to the California Constitution, Article VI, section 10, and section 22 of the 1933 Act, 15 U.S.C. §77v. This action is not removable.  The claims alleged herein arise under sections 11, 12(a)(2), and 15 of the 1933 Act.  *See* 15 U.S.C. §§77k, 77l(a)(2), and 77o.  Section 22 of the 1933 Act, 15 U.S.C. §77v, expressly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  Section 16(c) refers to "covered class action[s] brought in any State court involving a covered security, as set forth in subsection (b)"; and subsection (b) of section 16 in turn includes within its scope only covered class actions "based upon the statutory or common

- 1 -

1  law of any State or subdivision thereof." *See also* 15 U.S.C. §77p.  This is an action asserting
2  only federal law claims.  Thus, this action is not removable to federal court.

3  ·4.  The violations of law complained of herein occurred in California and in large
4  part in this County.  More, certain of the Individual Defendants (as defined herein) reside in San
5  Mateo County.  In particular, defendants Christopher Hsu ("Hsu") and John Schultz ("Schultz")
6  are residents of this County.

7  5.  This Court has personal jurisdiction over each of the defendants named herein
8  because they conduct business, were citizens of, or took steps to prepare the Merger in
9  California.

10  6.  Venus is proper because the defendants' wrongful acts arose in and emanated
11  from, at least in part, this County.  The violations of law complained of herein occurred in this
12  County, including the dissemination of the materially misleading statements into the County.
13  Further, certain of the defendants live in or conduct business in this County.

14  **PARTIES**

15  **Plaintiff**

16  7.  Plaintiff Marilyn Clark acquired Micro Focus ADSs in the Merger and was
17  damaged thereby.

18  **Defendants**

19  8.  Defendant Micro Focus is a global enterprise software provider supporting the
20  technology needs and challenges of business.  The Company is headquartered in the United
21  Kingdom, but conducts substantial business in the United States, including within this County.

22  9.  Defendant Hsu served as Micro Focus's Chief Executive Officer ("CEO") and a
23  director of the board (the "Board") beginning on September 1, 2017—the date the Merger
24  closed—and was named to these positions in the Offering Documents.  Prior to becoming the
25  CEO of Micro Focus, defendant Hsu served as the Chief Operating Officer ("COO") of HPE and
26  the Executive Vice President and General Manager of HPE Software, which was acquired by
27  Micro Focus in the Merger.  On March 19, 2018, Micro Focus announced that defendant Hsu

28

1  was resigning in order to "spend more time with his family and pursue another opportunity" only
2  six and a half months after the Merger closed.

3        10.     Defendant Stephen Murdoch ("Murdoch") served as Micro Focus's CEO and a
4  director until he was replaced in those positions by defendant Hsu as a result of the Merger, after
5  which Murdoch became the Company's COO. Defendant Murdoch became CEO and a director
6  of the Company after defendant Hsu's resignation in March 2018.

7        11.     Defendant Mike Phillips ("Phillips") served as Micro Focus's Chief Financial
8  Officer ("CFO") and director at the time of the Merger. On January 8, 2018, Micro Focus
9  announced that defendant Phillips would be leaving his CFO role to serve as the Company's
10  Director of Mergers and Acquisitions ("M&A").

11        12.     Defendant Kevin Loosemore ("Loosemore") served as Micro Focus's Executive
12  Chairman of the Board at the time of the Merger.

13        13.     Defendant Nils Brauckmann ("Brauckmann") served as the CEO of Micro Focus's
14  SUSE segment and a director of the Board at the time of the Merger, although he left the Board
15  following the Merger.

16        14.     Defendant Karen Slatford ("Slatford") served as a director of the Company at the
17  time of the Merger.

18        15.     Defendant Richard Atkins ("Atkins") served as a director of the Company at the
19  time of the Merger.

20        16.     Defendant Amanda Brown ("Brown") served as a director of the Company at the
21  time of the Merger.

22        17.     Defendant Silke Scheiber ("Scheiber") served as a director of the Company at the
23  time of the Merger.

24        18.     Defendant Darren Roos ("Roos") served as a director of the Company at the time
25  of the Merger.

26        19.     Defendant Giselle Manon ("Manon") served as the authorized U.S. representative
27  of the Company at the time of the Merger.

28

1    20.    Defendant Schultz, as stated in the Offering Documents, would become a director

2    of the Company following the Merger.  On December 20, 2017, Micro Focus announced that

3    defendant Schultz would leave the Board.

4    21.    The defendants referenced above in ¶¶9-20 are collectively referred to herein as

5    the "Individual Defendants."  Other than defendants Hsu and Schultz, the Individual Defendants

6    signed the Registration Statement.  Furthermore, as directors and/or executive officers of the

7    Company, the Individual Defendants participated in the solicitation and sale of Micro Focus

8    ADSs to stockholders of HPE as consideration in the Merger for their own benefit and the

9    benefit of Micro Focus.

10    22.    The true names and capacities of defendants sued herein under California Code of

11    Civil Procedure section 474 as Does 1 through 25, inclusive, are presently not known to plaintiff,

12    who therefore sues these defendants by such fictitious names.  Plaintiff will seek to amend this

13    complaint and include these Doe defendants' true names and capacities when they are

14    ascertained.  Each of the fictitiously named defendants is responsible in some manner for the

15    conduct alleged herein and for the injuries suffered by the Class (as defined herein).

16    **SUBSTANTIVE ALLEGATIONS**

17    **Micro Focus Announces the Merger with HPE Software**

18    23.    Micro Focus is an infrastructure software company that develops, sells, and

19    supports software products and solutions to federal, airlines, and healthcare industries in the

20    United Kingdom, the United States, Germany, France, Japan, and other countries.

21    24.    In 2011, the predecessor to HPE, Hewlett-Packard Company ("HP"), purchased

22    the British software company, Autonomy Corporation plc ("Autonomy") for approximately

23    $10.3 billion.  HP's purchase of Autonomy has been one of the biggest blunders in M&A history.

24    HP accused Autonomy of fraud and accounting misrepresentation.  The U.S Department of

25    Justice brought fraud charges against Autonomy's former CFO, an action which is still pending.

26    In 2012, HP took an impairment charge of $8.8 billion related to the write-down of goodwill and

27    intangible assets acquired as part of the Autonomy transaction.

28

1    25.    On September 7, 2016, Micro Focus announced in a joint press release that it
2  would merge with the software business segment of HPE, HPE Software.  The Merger was
3  valued at $8.8 billion, which was larger than Micro Focus's entire market capitalization at the
4  time.  The consideration consisted of $6.6 billion in new issued ADSs to HPE stockholders, $2.5
5  billion payment to HPE, which came from newly incurred indebtedness of HPE Software, and a
6  $400 million payment to Micro Focus stockholders.  After the closing of the Merger, HPE's
7  stockholders would own 50.1% of the post-Merger company.

8    26.    The joint press release described the deal as a "[r]are opportunity to increase
9  significantly Micro Focus' scale and breadth through the combination with a business operating
10  in adjacent and complementary product areas with similar characteristics and benefitting from a
11  high proportion of recurring revenues and strong cash conversion."  The release also stated that
12  the Merger would create "one of the world's largest pure-play infrastructure software companies"
13  with "annual revenues of US$45 billion and [earnings before interest, taxes, depreciation, and
14  amortization ("EBITDA")] of US$1.35 billion."  Defendant Loosemore, Micro Focus's Executive
15  Chairman at the time, was quoted in the release as stating that the Merger "'represents a
16  compelling opportunity to create significant value for both companies' shareholders.'"

17    27.    The troubled remains of Autonomy made up a large portion of HPE Software.
18  However, the defendants publicly assured investors that Autonomy would not impact the quality
19  of the assets received by Micro Focus.  Rather, as defendant Loosemore claimed in a July 2017
20  conference call, Autonomy counted for less than 10% of the revenues of HPE Software and
21  assured investors that "we know what we're getting...."

22    28.    Micro Focus claimed that the completion of the Merger would occur
23  approximately a year after the announcement, in the third quarter of 2017.  The Company
24  claimed that it was working to ensure a successful integration and transition into a post-Merger
25
26
27
28

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1   company during this time.  Micro Focus's stockholders approved the Merger on May 26, 2017,

2   though it was still months before the transaction closed.[1]

3       29.     In the lead up to the Merger, defendants continued to discuss its prospects.  On

4   July 12, 2017, Micro Focus held an earnings conference call with analysts and investors to

5   discuss its preliminary financial results for the fiscal quarter and year ended April 30, 2017.  On

6   the call, then–CEO, defendant Murdoch stated that Micro Focus had employed significant

7   integration teams "all managed under a common governance structure, tracking more than

8   10,000 very specific tasks through to completion" in order to lay out the operational aspects of

9   the combined company.  Defendant Loosemore stated that regarding the Merger process: "The

10  HPE transaction milestones completed, all regulatory approvals done, 99.99% shareholder

11  approval; due to file the F-4 at the end of this week; prospectus due to go out fairly shortly; and

12  you're seeing we've refinanced on fairly good terms."

13  **The Materially Misleading and Incomplete Registration Statement and Prospectus**

14      30.     On August 4, 2017, Micro Focus filed with the SEC the Registration Statement

15  for the ADSs to be issued in connection with the Merger on Form F-4.  This Registration

16  Statement was amended on August 15, 2017, and declared effective that day.  On August 22,

17  2017, Micro Focus filed with the SEC the Prospectus for the ADSs to be issued in connection

18  with the Merger on Form 424B3.  The Prospectus incorporated and formed part of the

19  Registration Statement and are collectively referred to herein as the "Offering Documents."

20      31.     The Offering Documents were negligently prepared and, as a result, continued

21  untrue statements of material facts or omitted to state other facts necessary to make the

22  statements made not misleading, and was not prepared in accordance with the rules and

23  regulations governing its preparation.

24      32.     The Offering Documents claimed that the "market value of Micro Focus ADSs to

25  be issued" in the Merger had an estimated value of $6.6 billion, subject to the price of the

26  _____

27  [1] HPE stockholders were not required to vote on the Merger.

28

Company's shares at the time of the closing.  In fact, the Offering Documents contained the following question and answer concerning the market value of the post-Merger company:

> **Q: What is the estimated enterprise value of HPE Software and the consideration to be received by holders of Seattle Shares in the Merger?**
>
> A: The estimated $6.6 billion market value of the Micro Focus ADSs to be issued to holders of Seattle Shares (calculated for the purposes of this information statement/prospectus by reference to the closing mid-market price of a Micro Focus Share as of the close of business on July 27, 2017) and the $2.5 billion Seattle Payment imply an enterprise value for HPE Software of approximately $9.1 billion. The actual value of the Micro Focus Shares to be issued in the Merger and the Micro Focus ADSs to be issued by the Depositary will depend on the market price of Micro Focus Shares as of Closing.

33.    The Offering Document contained a section titled "Micro Focus' Reasons for Engaging in the Transactions," which touted the supposed benefits of the Merger.  Among other things, the Offering Documents claimed in this section that the Merger was expected to "enhance Adjusted Earnings Per Share" and that "significant cost benefits will arise from reducing duplicated central costs, combining corporate support functions (where appropriate) and increasing efficiency across all functions." The Offering Documents stated:

> The Micro Focus Board believes that segments of the infrastructure software market are consolidating and that successful companies in such markets will be those with outstanding operational efficiency and scale. The Transactions present a rare opportunity to achieve a significant increase in Micro Focus' scale and breadth, with the potential to deliver enhanced Total Shareholder Returns consistent with Micro Focus' stated objectives.

> The Micro Focus Board believes the Transactions will enhance Adjusted Earnings Per Share by April 30, 2019 and thereafter, with scope for further benefits as operational improvements are realized across the Enlarged Group.

> The Micro Focus Board believes the Transactions represent a substantial opportunity to:

> - create significantly greater scale and breadth of product portfolio covering largely adjacent areas of the software infrastructure market, thereby creating one of the world's largest pure-play infrastructure software companies;

> - add a substantial recurring revenue base to Micro Focus' existing product portfolio, together with access to important new growth drivers and new revenue models; and

- 7 -

- • accelerate operational effectiveness over the medium term, through the alignment of best practices between Micro Focus and HPE Software in areas such as product development, support, product management, account management, and sales force productivity, as well as achieving operational efficiencies where appropriate.

34.     The Offering Documents also stated that the Company's "available liquidity and working capital will be sufficient for not less than the next 12 months following the date of this information statement/prospectus" and that it was "targeting to reduce" its initial pro forma net debt to Facility EBITDA ratio "to its stated target of 2.5x Facility EBITDA within two years following Closing" from the 3.3 ratio expected at Merger closing.

35.     The Offering Documents also touted the Company's "successful track record of executing and integrating selected strategic acquisitions." For support, the Offering Documents pointed to the Company's March 2017 acquisition of assets and employees from HPE, stating that its acquisitions "included HPE naming SUSE as its preferred Open Source partner for Linux, OpenStack and Cloud Foundry solutions." The Offering Documents continued, stating that "[i]n each case, the Micro Focus Group's management team has successfully integrated the new business into the Micro Focus Group's then existing operations and executed a program of targeted cost cutting and/or restructuring in order to improve operational efficiencies and group profitability." While the Offering Documents stated that integration efforts had occasionally experienced certain challenges, "[h]istorically, the Micro Focus Group believes that it has successfully worked through these integration challenges and has not seen a material impact on its ability to obtain the desired integration results or improvements in operations and profitability."

36.     The Offering Documents touted the competitive and operational strengths of Micro Focus due to its strategic acquisitions, such as the Merger. For example, the Offering Documents stated that Micro Focus has "a clear strategy and business model" that was "focused on the way in which we believe that mature infrastructure software businesses should be managed and that the market for these businesses is going to consolidate." The Offering Documents stated that Micro Focus had positioned itself to be a leader in this consolidated space, as it has "set out to be an effective company at managing a portfolio of mature infrastructure

- 8 -

1  software assets."   The Offering Documents touted Micro Focus's "proven ability to execute,"

2  because it "not only delivers significant amounts of cash and consequently great flexibility, but

3  also [delivers] a competitive advantage in the acquisition of other similar assets."

4       37.    The Offering Documents listed the aims of Micro Focus's operational strategy as

5  achieving "1. Revenue growth; 2. Operational leverage; and 3. Significant cash generation."   In

6  addition, the Offering Documents stated that the Company's capital allocation, which included

7  strategic acquisitions, allowed it to achieve its long term objective of "15 to 20% per annum"

8  "Total Shareholder Returns" over the long run, and that acquisitions were "only made" "if the

9  Micro Focus Board believes that they will generate risk adjusted returns greater than the base

10  case."   The Offering Documents stated:

11          The software products offered by Micro Focus enable organizations to achieve
12  improved functionality and performance from their enterprise applications and
        middleware, whilst lowering their ongoing cost of [information technology
13  ("IT")] operations. The Micro Focus Group allocates capital and [human
        resources] to achieve its core objective of delivering Total Shareholder Returns of
14  15 to 20% per annum over the long term. The Micro Focus Group executes this
        strategy with a strong discipline around the uses of cash and optimizes Total
15  Shareholder Returns with a combination of organic execution, financial leverage
        and acquisitions. The Micro Focus Group has a base case model which estimates
16  the returns to Micro Focus Shareholders from organic execution and the return of
        excess cash. Acquisitions are only made if the Micro Focus Board believes that
17  they will generate risk adjusted returns greater than the base case. In the absence
        of material acquisitions, the Micro Focus Group's practice has been to return
18  excess cash to Micro Focus Shareholders through an appropriate mechanism.
19

20       38.    The Offering Documents further highlighted the Company's strength in making

21  acquisitions, featuring its "financial discipline in mergers and acquisitions," and "strong financial

22  discipline around the uses of cash."   The Offering Documents stated that the Company sought to

23  "acquire businesses in the mature infrastructure software space and improve the operational

24  efficiency of those businesses by applying the Micro Focus business model."   Specifically, the

25  Offering Documents stated that acquisitions would increase Micro Focus's ability to "help clients

26  derive value from their existing and often highly complex IT investments."

27       39.    The Offering Documents described at length the due diligence conducted in

28  approving the Merger.   In particular, the Offering Documents stated: According to the

- 9 -

Registration Statement, "the parties and their respective advisors engaged in mutual due diligence of Micro Focus' business and HPE Software, as applicable," as early as late June 2016. During August and September 2016, "Micro Focus and HPE and their respective legal advisors also negotiated the terms of various financing arrangements for the transaction with various financial institutions during this period." The Registration Statement claims that the HPE Board considered "the potential value to HPE Stockholders of the Micro Focus ADSs representing 50.1% of the Micro Focus Fully Diluted Shares that they will own immediately following the Merger, including value resulting from: (1) the potential cost reductions attributable to efficiencies and synergies to be realized by combining HPE Software with Micro Focus and (2) the benefits of separating HPE Software from HPE's other businesses."

40.    The Offering Documents also provided the Company and HPE Software's historical financial results.  Concerning Micro Focus, the Offering Documents highlight the Company's increasing revenue, stating that "[r]evenues grew by $135.7 million, or 10.9%, ... to $1,380.7 million in the fiscal year ended April 30, 2017."  In addition, the Offering Documents contained the following five years' worth of financial information, showing revenues of $1.38 billion for the fiscal year ending April 30, 2017:

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

| (in thousands) | As of and for the Year Ended April 30, | | | | |
|---|---|---|---|---|---|
| | 2013 | 2014 | 2015 | 2016 | 2017 |
| **Statement of Comprehensive Income Data:** | | | | | |
| Revenue | $   412,167 | $   433,058 | $   834,539 | $   1,245,048 | 1,380,702 |
| **Costs and expenses:** | | | | | |
| Cost of sales | $   (60,986) | $   (58,116) | $   (140,547) | $   (230,174) | (237,169) |
| Selling and distribution costs | (117,558) | (120,669) | (290,475) | (416,333) | (467,084) |
| Research and development expenses | (25,682) | (39,629) | (113,292) | (164,646) | (180,104) |
| Administrative expenses | (48,503) | (68,924) | (142,989) | (138,962) | (202,902) |
| | 252,729 | 277,338 | 687,303 | 950,115 | 1,087,259 |
| Operating profit | 159,438 | 155,720 | 147,236 | 294,934 | 293,443 |
| Other income (expense): | | | | | |
| Share of results of associates | — | — | (788) | (2,190) | (1,254) |
| Net finance costs | (7,894) | (7,879) | (55,021) | (97,348) | (95,845) |
| Profit before tax | 151,544 | 147,841 | 91,427 | 195,396 | 196,344 |
| Income tax benefit (expense), net | (29,767) | (25,759) | 10,024 | (32,424) | (38,541) |
| Net income | $   121,777 | $   122,082 | $   101,451 | $   162,972 | 157,803 |
| **Statement of Financial Position Data:** | | | | | |
| Total current assets | $   130,583 | $   140,072 | $   460,967 | $   954,361 | 442,193 |
| Total noncurrent assets | $   437,596 | $   464,945 | $   3,879,634 | $   3,681,332 | 4,203,764 |
| Total assets | $   568,179 | $   605,017 | $   4,340,601 | $   4,635,693 | 4,645,957 |
| Total current liabilities | $   459,725 | $   568,433 | $   988,030 | $   1,061,797 | 944,697 |
| Total noncurrent liabilities | $   48,697 | $   52,835 | $   2,074,510 | $   1,980,168 | 2,087,770 |
| Total liabilities | $   508,422 | $   621,268 | $   3,062,540 | $   3,041,965 | 3,032,467 |
| Total equity (deficit) | $   59,757 | $   (16,251) | $   1,278,061 | $   1,593,728 | 1,613,490 |

41.    The Offering Documents also broke out the Company's revenues by segment, showing:

| | Fiscal year ended April 30, 2017 Actual $m | Fiscal year ended April 30, 2016 Actual $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth % | Fiscal year ended April 30, 2016 Pro forma Constant Currency $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth % |
|---|---|---|---|---|---|---|---|
| **Micro Focus** | | | | | | | |
| Licence | 308.4 | 304.8 | 3.6 | 1.2% | 333.0 | (24.6) | (7.4%) |
| Maintenance | 720.7 | 644.5 | 76.2 | 11.8% | 754.5 | (33.8) | (4.5%) |
| Subscription | — | — | — | | — | — | |
| Consultancy | 48.2 | 41.9 | 6.3 | 15.0% | 54.8 | (6.6) | (12.0%) |
| Total | 1,077.3 | 991.2 | 86.1 | 8.7% | 1,142.3 | (65.0) | (5.7%) |
| **SUSE** | | | | | | | |
| Licence | — | — | — | | — | — | |
| Maintenance | — | — | — | | — | — | |
| Subscription | 298.7 | 248.9 | 49.8 | 20.0% | 245.5 | 53.2 | 21.7% |
| Consultancy | 4.7 | 4.9 | (0.2) | (4.1%) | 4.9 | (0.2) | (4.1%) |
| Total | 303.4 | 253.8 | 49.6 | 19.5% | 250.4 | 53.0 | 21.2% |
| **Group** | | | | | | | |
| Licence | 308.4 | 304.8 | 3.6 | 1.2% | 333.0 | (24.6) | (7.4%) |
| Maintenance | 720.7 | 644.5 | 76.2 | 11.8% | 754.5 | (33.8) | (4.5%) |
| Subscription | 298.7 | 248.9 | 49.8 | 20.0% | 245.5 | 53.2 | 21.7% |
| Consultancy | 52.9 | 46.8 | 6.1 | 13.0% | 59.7 | (6.8) | (11.4%) |
| **Total Revenue** | 1,380.7 | 1,245.0 | 135.7 | 10.9% | 1,392.7 | (12.0) | (0.9%) |

42.    The Offering Documents showed the Company's North America sales region's revenues increased by nearly $70 million between April 30, 2016 and April 30, 2017. In addition, the Offering Documents stated that "[w]hile the Micro Focus Product Portfolio did decline 5.7% on a pro forma constant currency basis in the fiscal year ended April 30, 2017 as compared to the fiscal year ended April 30, 2016, it delivered performance in line with

- 11 -

1  management expectations." The Offering Documents also stated that the Company's

2  "Underlying Adjusted EBITDA increased by $108.4 million, or 20.4%, to $640.9 million in the

3  fiscal year ended April 30, 2017 as compared to $532.5 million in the fiscal year ended April 30,

4  2016." The Offering Documents provided the following table of regional financial results:

| | Fiscal year ended April 30, 2017 Actual $m | Fiscal year ended April 30, 2016 Actual $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth $m | Fiscal year ended April 30, 2017 Actual (Decline)/ Growth % | Fiscal year ended April 30, 2016 Pro forma Constant Currency $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth $m | Fiscal year ended April 30, 2016 Pro forma Constant Currency (Decline)/ Growth % |
|---|---|---|---|---|---|---|---|
| **Micro Focus** | | | | | | | |
| North America | 591.4 | 525.2 | 66.2 | 12.6% | 627.1 | (35.7) | (5.7%) |
| International | 389.7 | 377.0 | 12.7 | 3.4% | 415.0 | (25.3) | (6.1%) |
| Asia Pacific & Japan | 96.2 | 89.0 | 7.2 | 8.1% | 100.2 | (4.0) | (4.0%) |
| Total | 1,077.3 | 991.2 | 86.1 | 8.7% | 1,142.3 | (65.0) | (5.7%) |
| **SUSE** | | | | | | | |
| North America | 121.8 | 108.6 | 13.2 | 12.2% | 108.7 | 13.1 | 12.1% |
| International | 142.8 | 115.6 | 27.2 | 23.5% | 111.6 | 31.2 | 28.0% |
| Asia Pacific & Japan | 38.8 | 29.6 | 9.2 | 31.1% | 30.1 | 8.7 | 28.9% |
| Total | 303.4 | 253.8 | 49.6 | 19.5% | 250.4 | 53.0 | 21.2% |
| **Group** | | | | | | | |
| North America | 713.2 | 633.8 | 79.4 | 12.5% | 735.8 | (22.6) | (3.1%) |
| International | 532.5 | 492.6 | 39.9 | 8.1% | 526.6 | 5.9 | 1.1% |
| Asia Pacific & Japan | 135.0 | 118.6 | 16.4 | 13.8% | 130.3 | 4.7 | 3.6% |
| **Total revenue** | 1,380.7 | 1,245.0 | 135.7 | 10.9% | 1,392.7 | (12.0) | (0.9%) |

15    43.    The Offering Documents also contained the historical financial information for

16  the subsidiary of HPE that held the assets that the Company was acquiring in the Merger, called

17  Seattle SpinCo, Inc. The Offering Documents contained the following information:

| (in millions) | As of and for the Fiscal Years Ended October 31 | | | As of and for the Six Months Ended April 30 | |
|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2016 | 2017 |
| **Combined Statements of Operations** | | | | | |
| Net revenue | $ 3,933 | $ 3,622 | $ 3,195 | $ 1,554 | $ 1,406 |
| Earnings (loss) from operations | 415 | 321 | 238 | 109 | (48) |
| Net earnings (loss) | 361 | 391 | 400 | 124 | (39) |
| **Combined Balance Sheets** | | | | | |
| Total assets | $ 11,634 | $ 10,979 | $ 10,647 | | $ 10,460 |
| Total capital lease obligations | 21 | 32 | 36 | | 39 |
| **Combined Statements of Cash Flows** | | | | | |
| Net cash provided by operating activities | $ 708 | $ 235 | $ 123 | $ 253 | $ 176 |
| Net cash (used in) provided by investing activities | (16) | 40 | 211 | 222 | (17) |
| Net cash used in financing activities | (813) | (322) | (354) | (455) | (122) |

25    44.    The Offering Documents also contained the combined historical financial

26  information of Micro Focus and Seattle SpinCo, Inc. The Offering Documents provided:

- 12 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Micro Focus Unaudited Pro Forma Condensed Combined Statement of Comprehensive Income for the Year Ended April 30, 2017

| (In millions of U.S. dollars, except for per share data) | Historical Micro Focus for the year ended April 30, 2017 | Adjusted Seattle for the twelve months ended April 30, 2017 | Pro forma merger adjustments | Total pro forma combined |
|---|---|---|---|---|
| Revenue | $ 1,381 | $ 3,053 | $ — | $ 4,434 |
| Cost of sales comprising: | | | | |
| Cost of sales (excluding amortization of capitalized development costs and acquired technology intangibles) | (146) | (823) | — | (969) |
| Amortization of product development costs | (22) | — | — | (22) |
| Amortization of acquired technology intangibles | (69) | (97) | (62) | (228) |
| Cost of sales | (237) | (920) | (62) | (1,219) |
| Gross profit | $ 1,144 | $ 2,133 | $ (62) | $ 3,215 |
| Selling and distribution costs | (467) | (994) | (437) | (1,898) |
| Research and development expenses comprising: | | | | |
| Expenditure incurred in the year | (208) | (526) | — | (734) |
| Capitalization of product development costs | 28 | — | — | 28 |
| Research and development expenses | (180) | (526) | — | (706) |
| Administrative expenses | (203) | (546) | 321 | (428) |
| Operating profit | $ 294 | $ 67 | $ (178) | $ 183 |

| (In millions of U.S. dollars, except for per share data) | Historical Micro Focus for the year ended April 30, 2017 | Adjusted Seattle for the twelve months ended April 30, 2017 | Pro forma merger adjustments | Total pro forma combined |
|---|---|---|---|---|
| Share of results of associates and gain on dilution of investment | (1) | — | — | (1) |
| Finance costs | (97) | (72) | (148) | (317) |
| Finance income | 1 | 13 | — | 14 |
| Profit (loss) before tax | 197 | 8 | (326) | (121) |
| Taxation | (39) | (123) | 108 | (54) |
| Profit (loss) for the period | $ 158 | $ (115) | $ (218) | $ (175) |
| Attributable to: | | | | |
| Equity shareholders of the parent | 158 | (115) | (218) | (175) |
| Noncontrolling interests | — | — | — | — |
| Profit (loss) for the period | $ 158 | $ (115) | $ (218) | $ (175) |
| Earnings (loss) per share attributable to equity shareholders of the parent: | | | | |
| Basic | $ 0.69 | | | $ (0.40) |
| Diluted | $ 0.67 | | | $ (0.40) |
| Weighted average shares outstanding: (in millions) | | | | |
| Basic | 229 | | 206 | 435 |
| Diluted | 237 | | 198 | 435 |

45.     The Offering Documents acknowledge the importance of maintaining "high customer satisfaction levels in order to retain and grow its customer base."   The Offering Documents also boasted that the Company had "over 20,000 customers, including 91 of the Fortune 100 companies," and that HPE Software had "over 30,000 customers worldwide, including 98 of the Fortune 100 companies."  While the Offering Documents warned about what "may" occur "if" the Company failed to retain and grow its customer base, they failed to disclose that a loss of customers had already occurred as a result of the separation of HPE Software from HPE and HP.  The Offering Documents stated:

> The Group's ability to maintain customer satisfaction depends in part on the quality of its professional service organization and technical and other support services, including the quality of the support provided on its behalf by certain partners. Once products are deployed within the IT environments of the Group's

- 13 -

customers, these customers depend on the Group's ongoing technical and other support services, as well as the support of the Group's channel partners, to resolve any issues relating to the implementation and maintenance of the Group's products. If the Group or its channel partners do not effectively assist its customers in deploying its products, succeed in helping its customers quickly resolve post-deployment issues, or provide effective ongoing support, the Group may be unable to sell additional products to existing customers and its reputation with potential customers could be damaged. As a result, the failure by the Group to maintain high-quality customer support could have a material adverse effect on the business, financial condition, results of operation and prospects of the Group.

46.     The Offering Documents contain similar "may" and "if" language to already occurring trends when it comes to discussing key personnel and sales employees. In particular, the Offering Documents stated that "Micro Focus believes the Group's success is dependent upon its ability to attract and retain senior management as well as other key employees, such as sales management, product management and development personnel that provide expertise and experience critical to the implementation of the Group's strategy." The Offering Documents also stated that the Company is "dependent on the success of its sales force, and its failure to develop the skill sets of its sales personnel may lead to poor sales performance." The Offering Documents stated that Micro Focus had "more than 4,800 employees in over 90 global locations." Similarly, the Offering Documents stated that HPE Software had "approximately 16,900 employees as of October 31, 2016," including certain employees from HPE's global marketing team and central corporate function. The Offering Documents acknowledged the material importance of keeping sales employees and the risks that "may" occur to the Company's business "if" it failed to retain key personnel and sales employees, yet failed to disclose that a greater number of sales employees had already been laid off, quit, or switched roles than had been disclosed and that the diminished sales capabilities as a result of these changes was already hurting sales and revenues.

47.     Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303, requires defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Similarly, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503,

- 14 -

1  requires, in the "Risk Factors" section of registration statements and prospectuses, "a discussion

2  of the most significant factors that make the offering speculative or risky" and requires each risk

3  factor to "adequately describe[] the risk."  The failure of the Registration Statement to disclose

4  the facts listed below violated 17 C.F.R. §229.303(a)(3)(ii), because these undisclosed facts

5  would (and did) have an unfavorable impact on the Company's sales, revenues, and income from

6  continuing operations.  This failure also violated 17 C.F.R. §229.503 because these specific risks

7  were not adequately disclosed, or disclosed at all, even though they were some of the most

8  significant factors that made an investment in Micro Focus ADSs speculative or risky.

9       48.    The statements described above were false and misleading because they failed to

10  disclose and misrepresented the following adverse facts that existed at the time they were made:

11           (a)    the decoupling from HPE was causing HPE Software to experience

12  significant disruption in global customer accounts, which in turn impacted HPE Software's

13  ability to retain customers and for the post-Merger company to recognize the claimed synergies;

14           (b)    as defendants admitted, sales force was the critical ingredient in the

15  Company's health, yet Micro Focus was losing employees, including key sales personnel, and

16  such loss already negatively impacted the Company's health and revenue;

17           (c)    Micro Focus was on pace to significantly miss market expectations for its

18  interim results in its core legacy business for the six months ended October 31, 2017—with

19  revenues for the Company's Existing Products portfolio ultimately declining 7% during the

20  period and its licensing revenues in this segment declining 17% during this time—and that these

21  worsening revenue trends were accelerating;

22           (d)    Micro Focus was experiencing significant sales execution problems in its

23  North America region;

24           (e)    HPE Software did not have the operational capabilities, loyal customer

25  base, products, or key personnel to justify its purchase price or to reverse worsening revenue

26  trends;

27           (f)    Micro Focus had failed to put in place the operations, procedures, and

28  personnel necessary to integrate successfully with HPE Software, or conduct sufficient due

- 15 -

1   diligence, so as to provide a reasonable likelihood that the purported synergies from the Merger
2   would be realized;

3               (g)      the total enterprise value for the Merger was artificially inflated by more
4   than $3.4 billion; and

5               (h)      because of the above, the Company's ability to service the increased debt
6   caused by the Merger was severely impaired.

7       49.     Approximately one and a half months after the IPO, Micro Focus lowered
8   revenue and earnings per share guidance.  The Company explained that its Chief Sales Officer
9   had left the Company and its sales organization had flattened.

10      50.     On September 6, 2017, Micro Focus filed with the SEC its third quarter financial
11  results and an update for the period ending October 31, 2017, for HPE Software on Form 6-K.
12  The Form 6-K stated that HPE Software generated revenues of $718 million for the quarter
13  ended July 31, 2017, which represented a 3% revenue decline compared to the same period in
14  2016.  The Form 6-K also provided guidance for HPE Software for the year ended October 31,
15  2017, in the range of $2.89 billion to $2.96 billion "driven by the active reduction of less
16  profitable professional services in sub-scale service lines and geographies together with lower
17  license revenue offset by increasing [software as a service] revenue and support revenue being
18  broadly flat."  This guidance range implied fourth quarter 2017 revenues down 13% at the
19  midpoint.

20      51.     On January 8, 2018, Micro Focus filed with the SEC its financial and operating
21  results for the six months ended October 31, 2017 on Form 6-K (the "January Interim Update").
22  The Company reported revenue of only $1.235 billion for the period and an adjusted EBITDA of
23  only $530 million.  The HPE Software revenue for the year ended October 31, 2017, came in at
24  the very bottom of the prior reported guidance at $2.891 billion, and $34 million below the mid-
25  point.  In addition, the Company stated that it had suffered sales execution issues in its North
26  America region stemming from the loss of key sales personnel.  Micro Focus's legacy businesses
27  revenue came in 2.7% lower and Adjusted EBITDA came in 4.1% lower for the period as Micro
28  Focus stated it had "put operational improvement plans on hold while working on the completion

1  of the HPE Software transaction."  In addition, Micro Focus reported revenues of only $500.3
2  million for the six months ended October 31, 2017, in its Existing Products segment, reflecting a
3  7% year-over-year decline.  The Company's licensing services in its Existing Products segment
4  declined 17% and its consultancy services in the segment declined 11.7% during this same time.
5  The Company also revealed that defendant Phillips would change positions from CFO to the
6  Company's Director of M&A.

7       52.     Then, on March 19, 2018, Micro Focus filed with the SEC a trading update on
8  Form 6-K.  The trading update stated that the Company's revenue declines had significantly
9  accelerated.  Specifically, Micro Focus lowered its constant currency revenue guidance for the
10 twelve months ended October 31, 2018, to minus 6% to minus 9% compared to the prior year.
11 This more than doubled the rate of revenue decline provided in the January Interim Update.  The
12 trading update also stated that the worsening revenue trends stemmed from disruption of former
13 HP global customer accounts as a result of the de-merger of HP and HPE—an event that
14 occurred in November 2015—and that the Company had suffered ongoing sales execution
15 issues, particularly in North America, as well as significant employee attrition.  In addition, the
16 trading update revealed that defendant Hsu had abruptly resigned from the Company, despite
17 taking the helm as CEO only six and a half months previously and overseeing the Merger.

18      53.     On March 22, 2018, the price of Micro Focus ADSs closed at $12.99 per ADS,
19 representing a decline of more than 54% from the closing price of the ADSs on the date of the
20 Merger's close.

21                          **CLASS ACTION ALLEGATIONS**

22      54.     Plaintiff brings this class action individually and on behalf of all persons who
23 purchased or otherwise acquired Micro Focus ADSs pursuant or traceable to the Offering
24 Documents issued in connection with the Merger (the "Class").  Excluded from the Class are
25 defendants and their families, the officers and directors and affiliates of defendants, at all
26 relevant times, members of their immediate families and their legal representatives, heirs,
27 successors, or assigns, and any entity in which defendants have or had a controlling interest.

28

55.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Micro Focus or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law, as complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the 1933 Act;

(b)     whether the Offering Documents were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

- 18 -

1

2

3

## **FIRST CAUSE OF ACTION**

### **Against Micro Focus, the Individual Defendants,**
### **and Does 1-25 for Violation of Section 11 of the 1933 Act**

4       60.     Plaintiff incorporates by reference and realleges each and every allegation

5   contained above, as though fully set forth herein.

6       61.     This Cause of Action is brought pursuant to section 11 of the 1933 Act, 15 U.S.C.

7   §77k, on behalf of the Class, against all defendants.

8       62.     This Cause of Action does not sound in fraud.  Plaintiff does not allege that

9   the Individual Defendants had scienter or fraudulent intent, which are not elements of a section

10   11 claim.

11       63.     The Registration Statement for the Merger was inaccurate and misleading,

12   contained untrue statements of material facts, omitted to state other facts necessary to make the

13   statements made not misleading, and omitted to state material facts required to be stated therein.

14       64.     Micro Focus is the registrant and issuer for the ADSs sold in the Merger.   As

15   issuer of the ADSs, Micro Focus is strictly liable to plaintiff and the Class for the misstatements and

16   omissions in the Registration Statement.

17       65.     The defendants named herein were responsible for the contents and dissemination of

18   the Registration Statement.

19       66.     None of the defendants named herein made a reasonable investigation or

20   possessed reasonable grounds for the belief that the statements contained in the Registration

21   Statement were true and without omissions of any material facts and were not misleading.

22       67.     By reason of the conduct alleged herein, each defendant violated, and/or

23   controlled a person who violated, section 11 of the 1933 Act.

24       68.     Plaintiff acquired Micro Focus ADSs pursuant and traceable to the

25   Registration Statement for the Merger.  Plaintiff and the Class have sustained damages.   The

26   value of Micro Focus ADSs has declined substantially subsequent to and due to defendants'

27   violations.

28

- 19 -

1    69.    At the time of their purchases and acquisitions of Micro Focus ADSs, plaintiff

2    and other members of the Class were without knowledge of the facts concerning the wrongful

3    conduct alleged herein.  Less than one year has elapsed from the time that plaintiff discovered or

4    reasonably could have discovered the facts upon which this complaint is based to the time that

5    plaintiff filed this complaint.   Less than three years has elapsed between the time that the

6    securities upon which this Cause of Action is brought were offered to the public and the time

7    plaintiff filed this complaint.

8    **SECOND CAUSE OF ACTION**

9    **Against Micro Focus, the Individual Defendants, and**
     **Does 1-25 for Violation of Section 12(a)(2) of the 1933 Act**
10

11   70.    Plaintiff incorporates by reference and realleges each and every allegation

12   contained above, as though fully set forth herein.

13   71.    This Cause of Action is brought pursuant to section 12(a)(2) of the 1933 Act,

14   15U.S.C. §77l(a)(2), on behalf of the Class, against all defendants.

15   72.    This Cause of Action does not sound in fraud.  Plaintiff does not allege that the

16   Individual Defendants had scienter or fraudulent intent, which are not elements of a section

17   12(a)(2) claim.

18   73.    By means of the defective Prospectus, defendants promoted and sold Micro Focus

19   ADSs to plaintiff and other members of the Class for the benefit of themselves and their

20   associates.

21   74.    The Prospectus contained untrue statements of material fact and concealed and

22   failed to disclose material facts, as detailed above.  Defendants owed plaintiff and other members

23   of the Class who purchased or acquired Micro Focus ADSs pursuant to the Prospectus the duty

24   to make a reasonable and diligent investigation of the statements contained in the Prospectus to

25   ensure that such statements were true and that there was no omission to state a material fact

26   required to be stated in order to make the statements contained therein not misleading.

27   Defendants, in the exercise of reasonable care, should have known of the misstatements and

28   omissions contained in the Prospectus as set forth above.

- 20 -

1    75.    Plaintiff did not know, nor in the exercise of reasonable diligence could have

2  known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired

3  Micro Focus ADSs.

4    76.    By reason of the conduct alleged herein, defendants violated section 12(a)(2) of

5  the 1933 Act.  As a direct and proximate result of such violations, plaintiff and the other

6  members of the Class who purchased or acquired Micro Focus ADSs pursuant to the Prospectus

7  sustained substantial damages.  Accordingly, plaintiff and the other members of the Class who

8  hold the Micro Focus ADSs issued pursuant to the Prospectus have the right to rescind and

9  recover the consideration paid for their ADSs, and hereby tender their ADSs to the defendants

10  sued herein.  Class members who have sold their ADSs seek damages to the extent permitted by

11  law.

12                              **THIRD CAUSE OF ACTION**

13                      **Against Micro Focus, the Individual Defendants,**
                **and Does 1-25 for Violation of Section 15 of the 1933 Act**
14

15    77.    Plaintiff incorporates by reference and realleges each and every allegation

16  contained above, as though fully set forth herein.

17    78.    This Cause of Action is brought pursuant to section 15 of the 1933 Act against

18  Micro Focus and the Individual Defendants.

19    79.    The Individual Defendants each were control persons of Micro Focus by virtue of

20  their positions as directors, senior officers, and/or authorized representatives of Micro Focus.  The

21  Individual Defendants each had a series of direct and/or indirect business and/or personal

22  relationships with other directors and/or officers and/or major stockholders of Micro Focus

23  and/or HPE Software.  The Company controlled the Individual Defendants and all of its

24  employees.

25    80.    Defendants each were culpable participants in the violations of sections 11 and

26  12(a)(2) of the 1933 Act alleged in the Causes of Action above, based on their having signed or

27  authorized the signing of the Registration Statement and having otherwise participated in the

28

1   process that allowed the issuance of Micro Focus ADSs in the Merger to be successfully

2   completed.

3                                          **PRAYER FOR RELIEF**

4          WHEREFORE, plaintiff prays for relief and judgment, as follows:

5          A.      Under section 382 of the California Code of Civil Procedure, certifying this as a

6   class action, appointing plaintiff as a Class representative under California Rule of Court 3.764,

7   and appointing plaintiff's counsel as Class counsel;

8          B.      Awarding damages in favor of plaintiff and the Class against all defendants,

9   jointly and severally, in an amount to be proven at trial, including interest thereon;

10         C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in

11   this action, including counsel fees and expert fees;

12         D.      Awarding rescission or a rescissory measure of damages; and

13         E.      Awarding equitable, injunctive or other relief, including disgorgement or

14   restitution, as deemed appropriate by the Court.

15                                          **JURY DEMAND**

16         Plaintiff demands trial by jury.

17   Dated: May 22, 2018                      ROBBINS ARROYO LLP
                                              BRIAN J. ROBBINS
18                                            STEPHEN J. ODDO
                                              ERIC M. CARRINO            (w/ Permission
19                                                                            SFT )
20                                            _Brian Robbins_
                                              BRIAN J. ROBBINS
21
                                              600 B Street, Suite 1900
22                                            San Diego, CA 92101
                                              Telephone: (619) 525-3990
23                                            Facsimile: (619) 525-3991
                                              E-mail: brobbins@robbinsarroyo.com
24                                                     soddo@robbinsarroyo.com
                                                       ecarrino@robbinsarroyo.com
25
                                              Attorneys for Plaintiff
26

27   1265958

28

                                               - 22 -
                   COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933