# EXHIBIT 2

**FILED**
Superior Court of California
County of Los Angeles

**JUL 25 2017**

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Shaunya Golden

1  BOTTINI & BOTTINI, INC.
   Francis A. Bottini, Jr. (SBN 175783)
2  Albert Y. Chang (SBN 296065)
   Yury A. Kolesnikov (SBN 271173)
3  7817 Ivanhoe Avenue, Suite 102
   La Jolla, California 92037
4  Telephone:  (858) 914-2001
   Facsimile:  (858) 914-2002
5  Email:    fbottini@bottinilaw.com
             achang@bottinilaw.com
6            ykolesnikov@bottinilaw.com

7

8  *Attorneys for Plaintiffs*

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 COUNTY OF LOS ANGELES

11 CHENGHSIN D. HSIEH and WEI C.    )  Case No. __BC 6 6 9 3 9 4__
   HSIEH, individually and on behalf of )
12 all others similarly situated,        )
                                         )  Class Action
13                                       )
                       Plaintiffs,       )  **COMPLAINT FOR VIOLATIONS**
14                                       )  **OF SECTIONS 11, 12, AND 15 OF**
                                         )  **THE SECURITIES ACT OF 1933**
15              vs.                      )
                                         )  **DEMAND FOR JURY TRIAL**
16 SNAP INC., EVAN SPIEGEL,             )
   ANDREW VOLLERO, MORGAN              )
17 STANLEY & CO. LLC, GOLDMAN,          )
   SACHS & CO., J.P. MORGAN            )
18 SECURITIES LLC, DEUTSCHE            )
   BANK SECURITIES INC., BARCLAYS      )  By Fax
19 CAPITAL INC., CREDIT SUISSE          )
20 SECURITIES (USA) LLC, and ALLEN      )
   & COMPANY LLC,                      )
21                                       )
                       Defendants.       )
22 _____ )

23

24

25

26

27

28

Complaint for Violations of the Federal Securities Laws

CIT/CASE:               BC669394
LEH/DEF#:
RECEIPT #:              CCH465980066
DATE PAID:  07/25/17    03:12 PM  310
PAYMENT:    $1,000.00
RECEIVED:
  CHECK:               $1,000.00
  CASH:                  $0.00
  CHANGE:                $0.00
  CARD:                  $0.00

CIT/CASE:               BC669394
LEH/DEF#:
RECEIPT #:              CCH465980065
DATE PAID:  07/25/17    03:11 PM  310
PAYMENT:    $435.00
RECEIVED:
  CHECK:                $435.00
  CASH:                  $0.00
  CHANGE:                $0.00
  CARD:                  $0.00

1       Plaintiffs Chenghsin D. Hsieh and Wei C. Hsieh ("Plaintiffs") allege the

2   following based upon the investigation of Plaintiffs' counsel, which included a review

3   and analysis of (a) United States Securities and Exchange Commission ("SEC")

4   filings by defendant Snap, Inc. ("Snap" or the "Company"), as well as other

5   regulatory filings and reports; (b) securities analysts' reports and advisories about

6   Snap; (c) press releases and other public statements issued by Snap; and (d) media

7   reports about Snap. Plaintiffs believe that substantial additional evidentiary support

8   will exist for the allegations set forth herein after a reasonable opportunity for

9   discovery.

## I.    NATURE OF THE ACTION

10

11       1.    Plaintiffs bring this class action under the Securities Act of 1933 ("1933

12   Act"), asserting claims against Snap, certain of its officers and directors, and certain

13   underwriters for its March 2, 2017 initial public offering (the "IPO"). Plaintiffs seek

14   to represent all persons who purchased Snap common stock in or traceable to Snap's

15   false and misleading registration statement and prospectus (collectively, the

16   "Registration Statement")[1] issued in connection with the IPO.

17       2.    Snap Inc. is a camera company that provides technology and social

18   media services. The Company develops mobile camera application products and

19   services that allow users to send and receive photos, drawings, text, and videos.

20   Snap serves customers worldwide.

21       3.    Founded in 2010, the Company was formerly known as "Snapchat, Inc."

22   and changed its name to Snap Inc. in September 2016. Snap is headquartered in

23   Venice, California. Snap's stock trades on the New York Stock Exchange ("NYSE")

24   under the ticker symbol "SNAP."

25       4.    On or about March 3, 2017, the Company completed its IPO, issuing

26   200,000,000 shares and raising net proceeds of approximately $3.91 billion.

27

28       [1] Snap's registration statement (Form S-1) was initially filed with the SEC on March 2, 2017. On March 3, 2017, Snap filed with the SEC a prospectus (Form 424B4).

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Snap's reported user growth was materially false and misleading; and (ii) as a result, Snap's public statements were materially false and misleading at all relevant times.

6.    On May 10, 2017, post-market, Snap issued its first quarterly report as a public company, disclosing disappointing user growth at the Company's Snapchat messaging platform. For the quarter, Snap reported 166 million daily users, only 8 million more than in the previous period and only 44 million more than the same period in the prior year—Snapchat's slowest year-to-year growth rate in at least two years.

7.    On this news, Snap's share price fell $4.93, or 21.45%, to close at $18.05 on May 11, 2017.

8.    On May 16, 2017, *Bloomberg* reported that a former Snap employee, Anthony Pompliano ("Pompliano"), had filed a lawsuit against Snap, "claim[ing] he was fired after three weeks on the job for raising questions about allegedly false growth metrics [and] seeking whistleblower protection against retaliation by [the] company."

9.    Over the next two months, Snap's stock continued to decline, closing at $14.73 on July 18, 2017, well below the IPO price.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## II.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, § 10, because this case is a cause not given by statute to other trial courts.  This action is not

removable. The claims alleged herein arise under §§ 11, 12(a)(2) and 15 of the 1933 Act. *See* 15 U.S.C. §§ 77k, 77l(a)(2), 77o. Jurisdiction is conferred by § 22 of the 1933 Act and venue is proper pursuant to § 22 of the 1933 Act. *See* 15 U.S.C. § 77v. Section 22 of the 1933 Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States." *Id*. Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law. *See* 15 U.S.C. § 77p(c), (f)(2). This is an action asserting federal law claims. Thus, it does not fall within the definition of "covered class action" under § 16(b)-(c) of the 1933 Act and therefore is not removable to federal court.

12.    This Court possesses personal jurisdiction over each defendant because (a) defendants and their agents affirmatively solicited the subject securities and registration statement to investors in California; and (b) defendants have sufficient contacts with California, or have otherwise purposefully availed themselves of benefits from California or have property in California so as to render the exercise of jurisdiction over each by California courts consistent with traditional notions of fair play and substantial justice.

13.    Venue is proper in the County of Los Angeles under Section 395 of the California Code of Civil Procedure because (a) the wrongful acts and harm complained of herein occurred in or was directed from this County; and (b) Snap's corporate headquarters are located in this County.

### III.    PARTIES

#### A.    Plaintiffs

14.    Plaintiffs purchased Snap common stock pursuant or traceable to the IPO and were damaged thereby. Plaintiffs purchased shares on March 2, 2017 in the IPO and were damaged. Defendants solicited Plaintiffs' purchases and caused the Prospectus to be delivered to Plaintiffs in connection with their purchases.

Doc# 1 Page# 4 - Doc ID = 1704312660 - Doc Type = OTHER

**B.      Defendants**

**(1)      The Snap Defendants**

15.      Defendant Snap is incorporated in Delaware and its principal executive offices are located at 63 Market Street, Venice, California 90291. Snap's securities are traded on the NYSE under the ticker symbol "SNAP."

16.      Defendant Evan Spiegel ("Spiegel") co-founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and Director.

17.      Defendant Andrew Vollero ("Vollero") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

18.      The Defendants referenced above in ¶¶ 16-17 are sometimes referred to as the "Individual Defendants."

**(2)      The Underwriter Defendants**

19.      Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for the IPO. As an underwriter, Morgan Stanley helped draft and disseminate the Registration Statement and solicit investors to purchase Snap common stock issued pursuant thereto. Morgan Stanley maintains offices in Los Angeles, Menlo Park, and San Francisco, California.

20.      Defendant Goldman, Sachs & Co. ("Goldman Sachs") served as an underwriter for Snap's IPO. As an underwriter, Goldman Sachs helped draft and disseminate the Registration Statement and solicit investors to purchase Snap common stock issued pursuant thereto. Goldman Sachs maintains offices in Los Angeles, and San Francisco, California.

21.      Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for Snap's IPO. As an underwriter, J.P. Morgan helped draft and disseminate the Registration Statement and solicit investors to purchase Snap common stock issued pursuant thereto. J.P. Morgan maintains offices in Newport Beach, Palm Beach, and San Francisco, California.

22.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") served as an underwriter for Snap's IPO. As an underwriter, Deutsche Bank helped draft and disseminate the Registration Statement and solicit investors to purchase Snap common stock issued pursuant thereto. Deutsche Bank maintains offices in Costa Mesa, Los Angeles, Menlo Park, Palo Alto, Santa Ana, San Francisco, and Walnut Creek, California.

23.     Defendant Barclays Capital Inc. ("Barclays") served as an underwriter for Snap's IPO. As an underwriter, Barclays helped draft and disseminate the Registration Statement and solicit investors to purchase Snap common stock issued pursuant thereto.  Barclays maintains offices in Los Angeles, Menlo Park, and San Francisco, California.

24.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for Snap's IPO. As an underwriter, Credit Suisse helped draft and disseminate the Registration Statement and solicit investors to purchase Snap common stock issued pursuant thereto. Credit Suisse maintains offices in Los Angeles, San Francisco, and San Diego, California.

25.     Defendant Allen & Company LLC ("Allen & Company") served as an underwriter for Snap's IPO. As an underwriter, Allen & Company helped draft and disseminate the Registration Statement and solicit investors to purchase Snap common stock issued pursuant thereto. Allen & Company is headquartered in New York.

26.     Defendants Morgan Stanley, Goldman Sachs, J.P. Morgan, Deutsche Bank, Barclays, Credit Suisse and Allen & Company are collectively referred to hereinafter as the "Underwriter Defendants." The Underwriter Defendants received commissions for their participation in the IPO.

///

///

///

Doc# 1 Page# 6 - Doc ID = 1704312660 - Doc Type = OTHER

# IV.   SUBSTANTIVE ALLEGATIONS

27.   Snap is a camera company that provides technology and social media services. The Company develops mobile camera application products and services that allow users to send and receive photos, drawings, text, and videos. Snap serves customers worldwide.

28.   On February 2, 2017, Snap filed a registration statement on Form S-1 with the SEC in connection with the IPO. The registration statement was subsequently amended several times, with the final amended registration statement filed on Form S-1/A with the SEC on February 27, 2017 (collectively, the "Registration Statement").

29.   The Registration Statement contained a preliminary prospectus. The final prospectus (the "Prospectus") was filed with the SEC on March 3, 2017.

30.   On March 1, 2017, the SEC declared the Registration Statement effective.

31.   On or about March 3, 2017, the Company completed its IPO, issuing 200,000,000 shares and raising net proceeds of approximately $3.91 billion.

## Materially False and Misleading Statements in the Prospectus

32.   On March 2, 2017, Snap filed its Prospectus with the SEC, which forms part of the Registration Statement. In the Prospectus, the Company admitted that statistics regarding the number of users it had and user engagement trends were critical:

### Factors Impacting our Business

#### User Engagement

*Daily user engagement with our products is a critical component to our business* because it influences our advertising inventory as well as our expenses.

33.   The Prospectus also stated, in relevant part:

We had 158 million Daily Active Users on average in the quarter ended December 31, 2016, and *we view Daily Active Users as a critical measure of our user engagement. Adding, maintaining, and*

7

Complaint for Violations of the Federal Securities Laws

*engaging Daily Active Users have been and will continue to be necessary.* We anticipate that our Daily Active Users growth rate will decline over time if the size of our active user base increases or we achieve higher market penetration rates. If our Daily Active Users growth rate slows, our financial performance will increasingly depend on our ability to elevate user engagement or increase our monetization of users.

. . .

*We regularly review metrics, including our Daily Active Users and ARPU metrics, to evaluate growth trends, measure our performance, and make strategic decisions.* These metrics are calculated using internal company data and have not been validated by an independent third party. While *these numbers are based on what we believe to be reasonable estimates of our user base for the applicable period of measurement*, there are inherent challenges in measuring how our products are used across large populations globally.

. . .

Unless otherwise stated, statistical information regarding our users and their activities is determined by calculating the daily average of the selected activity for the most recently completed quarter included in this prospectus. For example, we state that on average over 2.5 billion Snaps were created every day in the quarter ended December 31, 2016.

This metric is the average of the total number of Snaps created daily throughout the quarter ended December 31, 2016, which is the most recently completed quarter included in this prospectus. This same methodology is used to calculate other metrics related to Daily Active Users, including percentage of Daily Active Users that use the Chat Service every day, number of times a day Daily Active Users visit Snapchat, and amount of time spent on Snapchat every day.

(Emphases added.)

34.     The Prospectus also stated that Snap's method of monetizing its Daily User Engagement metrics was by selling advertising, and that there were a number of factors that would help Snap increase its advertising revenues:

*Ability to Monetize Users in Top Advertising Markets*

*We monetize our daily user engagement primarily through advertising. Our ability to grow our revenues depends in large part on our ability to increase ARPU in top advertising markets. There are a number of factors that we believe will help us grow ARPU,* including the demographics of our audience, the effectiveness of our advertising products, and our delivery and measurement capabilities.

8

Complaint for Violations of the Federal Securities Laws

35.    Moreover, the Prospectus stated that Snap was benefitting from increased advertising revenues, that one of the major growth opportunities for Snap was in mobile advertising, and that Snap was well-positioned to benefit from this trend because all its advertising was on mobile platforms:

### Our Opportunity

*We are fortunate to benefit from the growth of the mobile advertising market as advertisers move more of their advertising spend from traditional media to mobile*. IDC projects that worldwide advertising spend will grow by 18% from $652 billion in 2016 to $767 billion in 2020. *Mobile advertising is the fastest growing segment of this market, and is expected to grow nearly 3x from $66 billion in 2016 to $196 billion in 2020*, while non-mobile advertising spend is expected to decrease by approximately $15 billion during the same time period.



*Mobile Advertising to Drive Future Advertising Growth*
*(in billions)*

Source: IDC

We believe that one of the major factors driving this rapid growth is the shift of people's attention from desktop and television toward mobile. As people spend less time on traditional media like television, it becomes harder for advertisers to attain the same reach and frequency they have achieved in the past. On the other hand, as time spent on mobile grows, and especially as people spend more time watching videos on mobile, advertisers can transfer their traditional media advertising

9

spend to mobile to make up for that lost reach and frequency. According to forecasts by eMarketer and IDC for 2016, respectively, U.S. adults will spend 26% of their time consuming media on mobile devices, while only 13% of U.S. advertising will be spent on mobile. eMarketer also projects that people will continue to increase the time they spend on mobile compared to desktop and television. We think that this means there is already a significant mobile advertising opportunity, which will only grow as behavior continues to change. Furthermore, we believe that if we can build a scalable mobile advertising platform, we may help expedite the shift of advertising dollars from traditional media to mobile.

36.   The Prospectus also touted the fact that Snap was well-positioned to increase advertising revenues since its users were concentrated in the top advertising markets:

*Our Audience*

**Our users are concentrated among top advertising markets. The global advertising market is expected to grow from $652 billion in 2016 to $767 billion in 2020**, with the top ten countries commanding over 70% of overall worldwide advertising spend and nearly 85% of mobile advertising spend, according to IDC. **We benefit from having over 60% of our 158 million Daily Active Users come from countries on this list, including over 60 million Daily Active Users in the United States and Canada, and over 10 million Daily Active Users in the United Kingdom.**

**Since the entirety of our available advertising inventory is on mobile, our ability to grow our revenue is influenced by the size and growth of the mobile advertising market. IDC projects that mobile advertising spend will grow nearly 3x from $66 billion in 2016 to $196 billion in 2020**, while non-mobile advertising spend will decrease by approximately $15 billion during the same time period. We believe that as people's attention shifts from traditional media like desktop and television to mobile, significant advertising budgets will similarly be transferred to mobile advertising. Additionally, this shift of attention to mobile is particularly prevalent among younger audiences, with people aged 18 to 24—our largest age group among our U.S. Daily Active Users—having spent 35% less time watching traditional (live and time-shifted) television in an average month during the second quarter of 2016 compared to the second quarter of 2010, according to Nielsen.

37.   The Prospectus also stated that Snap expected to be able to continue to grow its advertising revenues due to its innovative approach to developing and structuring its ads:

Doc# 1 Page# 10 - Doc ID = 1704312660 - Doc Type = OTHER

*Advertising Products*

**The same team that designs our consumer products also helps design our advertising products. That means that we can take the things we learn while creating our consumer products and apply them to building innovative and engaging advertising products that feel familiar to our community.** Snap Ads, for example, are full-screen videos with sound, in the same format as the Snaps that drive the video consumption on our platform. **Furthermore, Sponsored Creative Tools leverage the popularity of Lenses and Geofilters to let people engage creatively with brands.**

**We believe that our ability to continue creating engaging user experiences and successfully converting that engagement into advertising products will influence the effectiveness of our future advertising products.**

38.    The Prospectus, while touting "the popularity of Lenses and Geofilters to let people engage creatively with brands," which supposedly enabled Snap to sell ads, failed to disclose that iFramed Canada Ltd. had notified Snap in August 2016 that these features infringed its patent portfolio.

39.    With respect to its core monetization strategy involving mobile advertising, the Prospectus also failed to disclose that Snap was experiencing poor ad completion rates and experiencing delays in developing its automated ad bidding platform, which would inhibit its ability to take advantage of the growth in mobile advertising and thus decrease its ability to increase revenues.

40.    The Registration Statement was signed by the Individual Defendants.

41.    The statements referenced in ¶¶32-38 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Snap's reported user growth was materially false and misleading; (ii) that Snap's core monetization strategy was based on iFramed's patent portfolio, and that iFramed had put Snap on notice of patent infringement in August 2016, yet

Doc# 1 Page# 11 - Doc ID = 1704312660 - Doc Type = OTHER

1  Snap never disclosed these facts in the Prospectus; (iii) that competition from
2  Facebook and Instagram was adversely affecting Snap more than disclosed; (iv) that
3  Snap was experiencing poor ad completion rates and experiencing delays in
4  developing its automated ad bidding platform; and (v) as a result, Snap's public
5  statements were materially false and misleading at all relevant times.

6  **The Truth Begins To Emerge**

7  42.  On May 10, 2017, post-market, Snap issued a press release and filed a
8  Form 8-K with the SEC announcing the Company's financial and operating results
9  for the quarter ended March 31, 2017 (the "Q1 2017 8-K"). For the quarter, the
10  Company reported a net loss of $2.21 billion, or $2.31 per diluted share, on revenue
11  of $149.65 million, compared to a net loss of $104.58 million, or $0.14 per diluted
12  share, on revenue of $38.8 million for the same period in the prior year.

13  43.  That same day, Snap filed its first quarterly report on Form 10-Q with
14  the SEC (the "Q1 2017 10-Q"), disclosing disappointing user growth at the
15  Company's Snapchat messaging platform. For the quarter, Snap reported 166
16  million daily users, only 8 million more than in the previous period and only 44
17  million more than the same period in the prior year—Snapchat's slowest year-to-
18  year growth rate in at least two years.  Compared to the previous year, Snap's user
19  growth rate had fallen from 48% to 36%.

20  44.  In the Q1 2017 10-Q, the Company stated, in relevant part:

> We had 166 million and 158 million Daily Active Users on average in the
> quarters ended March 31, 2017 and December 31, 2016, respectively, and
> we view Daily Active Users as a critical measure of our user engagement.
> Adding, maintaining, and engaging Daily Active Users have been and
> will continue to be necessary. We anticipate that our Daily Active Users
> growth rate will decline over time if the size of our active user base
> increases or we achieve higher market penetration rates. If our Daily
> Active Users growth rate slows, our financial performance will
> increasingly depend on our ability to elevate user engagement or increase
> our monetization of users.

\*\*\*

12

Complaint for Violations of the Federal Securities Laws

[A]lthough Daily Active Users grew by 7% from 143 million Daily Active Users for the quarter ended June 30, 2016 to 153 million Daily Active Users for the quarter ended September 30, 2016, the growth in the Daily Active Users was relatively flat in the latter part of the quarter ended September 30, 2016.

45.     On this news, Snap's share price fell $4.93, or 21.45%, to close at $18.05 on May 11, 2017.

46.     On May 16, 2017, *Bloomberg* reported that Anthony Pompliano, a former Snap employee with responsibility for running Snap's new user growth and engagement team, had filed a lawsuit against Snap, "claim[ing] he was fired after three weeks on the job for raising questions about allegedly false growth metrics [and] seeking whistleblower protection against retaliation by [the] company." Pompliano's complaint alleged, *inter alia*, that certain Snap executives "have been falsely representing its key performance metrics—such as user growth and engagement figures—to advertisers, the media, the public, and investors in an effort to inflate Snapchat's valuation prior to taking the company public in its recent multi-billion-dollar public offering", and that "Pompliano's refusal to participate in Snapchat's institutional pandemic of misrepresenting key industry metrics to its employees, investors, trading partners, advertisers, and media . . . led to his unlawful termination."

47.     On July 11, 2017, Defendant Morgan Stanley, one of Snap's lead underwriters, downgraded Snap's stock, saying "We were wrong." Morgan Stanley lowered its price target for Snap's stock by 42%, to just $16, and said that its bear case for the stock was $7. In the report, Morgan Stanley analyst Brian Nowak said "We have been wrong about SNAP's ability to innovate and improve its ad product this year (improving scalability, targeting, measurability, etc.) and user monetization as it works to move beyond 'experimental' ad budgets into larger branded and direct response and allocations."

48.     On this news, Snap stock dropped from a close of $16.99 on July 10, 2017 to close at $15.47 on July 11, 2017.

Complaint for Violations of the Federal Securities Laws

49.    On July 12, 2017, it was reported that United American Corp. would pursue patent infringement damages against Snap concerning Snap's use of geo-location based filters.   On June 28, 2017, United American Corp. purchased the patent portfolio of iFramed Canada Ltd. from Investel Capital Corp.   iFramed had put Snap on notice in August 2016 that its patent portfolio was being infringed by Snap, since Snap's core monetization strategy was allegedly based on iFramed's patents.   Snap did not disclose iFramed's allegation of patent infringement in the Prospectus.   On this news, Snap's stock declined further, closing at $15.24.

50.    Snap's stock has continued to decline.   As of July 24, 2017, Snap's stock closed at $14.08, significantly below the IPO price.

51.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

52.    Plaintiffs bring this action as a class action pursuant to Section 382 of the California Code of Civil Procedure on behalf of a class defined as follows:

> All persons or entities who acquired the common stock
> of Snap pursuant or traceable to the false and misleading
> Registration Statement issued in connection with Snap's
> March 2, 2017 IPO (the "Class").

Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable. Snap common stock is actively traded on the NASDAQ, a developed and global electronic market. Although the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds of members in the proposed

Doc# 1 Page# 14 - Doc ID = 1704312660 - Doc Type = OTHER

1   Class. Record owners and other members of the Class may be identified from records

2   maintained by Snap or its transfer agent and may be notified of the pendency of this

3   action by mail, using the form of notice similar to that customarily used in securities

4   class actions.

5        54.    Plaintiffs' claims are typical of the claims of the members of the Class,

6   as all members of the Class are similarly affected by defendants' wrongful conduct in

7   violation of federal law that is complained of herein.

8        55.    Plaintiffs will fairly and adequately protect the interests of the

9   members of the Class and have retained counsel competent and experienced in class

10   and securities litigation, including litigation of 1933 Act claims in this Court.

11        56.    Common questions of law and fact exist as to all members of the Class

12   and predominate over any questions solely affecting individual members of the

13   Class. Among the questions of law and fact common to the Class are:

14            (a)    whether defendants violated the 1933 Act;

15            (b)    whether statements made by defendants to the investing public

16       in connection with the IPO and in the Registration Statement misrepresented

17       material facts about the business, operations and prospects of Snap; and

18            (c)    to what extent the members of the Class have sustained damages

19       and the proper measure of damages.

20        57.    A class action is superior to all other available methods for the fair and

21   efficient adjudication of this controversy since joinder of all members is

22   impracticable. Furthermore, as the damages suffered by individual Class members

23   may be relatively small, the expense and burden of individual litigation make it

24   impracticable for members of the Class to individually redress the wrongs done to

25   them. There will be no difficulty in the management of this action as a class action.

26   ///

27   ///

28   ///

Complaint for Violations of the Federal Securities Laws

## V.    CAUSES OF ACTION

### Count I
### Violation of Section 11 of the 1933 Act
### Against All Defendants

58.    Plaintiffs incorporate each and every preceding paragraph by reference.

59.    This claim is brought pursuant to Section 11 of the 1933 Act, 15 U.S.C. § 77k, on behalf of the Class, against all defendants. This claim does not sound in fraud. Plaintiffs do not allege that defendants had scienter or fraudulent intent, which are not elements of a Section 11 claim.

60.    The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated therein.

61.    Snap is the registrant for the IPO. Defendants were responsible for the contents and dissemination of the Registration Statement.

62.    As issuer of the Class A common stock, Snap is strictly liable to Plaintiffs and the Class for any misstatements and omissions.

63.    Each defendant has failed to conduct a reasonable investigation, or lacks reasonable grounds, for the belief that the statements contained in the Registration Statement were true and free of omissions of any material facts and were not misleading.

64.    The Individual Defendants each signed the Registration Statement. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading and that the document contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the

16

Doc# 1 Page# 16 - Doc ID = 1704312660 - Doc Type = OTHER

1  Registration Statement and also should have known of the omissions of material fact

2  necessary to make the statements made therein not misleading. As such, the

3  Individual Defendants are liable to Plaintiffs and the Class.

4       65.    The Underwriter Defendants each served as underwriters in connection

5  with the IPO. These Defendants each had a duty to make a reasonable and diligent

6  investigation of the truthfulness and accuracy of the statements contained in the

7  Registration Statement. They had a duty to ensure that they were true and accurate,

8  that there were no omissions of material facts that would make the Registration

9  Statement misleading, and that the documents contained all facts required to be

10  stated therein. In the exercise of reasonable care, the Underwriter Defendants

11  should have known of the material misstatements and omissions contained in the

12  Registration Statement and also should have known of the omissions of material

13  facts necessary to make the statements made therein not misleading. As such, the

14  Underwriter Defendants are liable to Plaintiffs and the Class.

15       66.    By reason of the conduct herein alleged, each defendant violated, or

16  controlled a person who violated, Section 11 of the 1933 Act.

17       67.    Plaintiffs acquired Snap common stock pursuant or traceable to the

18  Registration Statement.

19       68.    Plaintiffs and the Class have sustained damages. The value of the Snap

20  common stock purchased pursuant to the Registration Statement has declined

21  substantially as a result of defendants' violations of the 1993 Act.

22       69.    At the time of their purchases of Snap common stock, Plaintiffs and

23  other members of the Class were without knowledge of the facts concerning the

24  wrongful conduct alleged herein and could not have reasonably discovered those

25  facts prior to the disclosures herein. Less than one year has elapsed from the time

26  when Plaintiffs discovered or reasonably could have discovered the facts upon which

27  this complaint is based, to the time when Plaintiffs commenced this action.  Less

28  than three years has elapsed from the time when the shares of Snap common stock

1    at issue were offered to the public, and the time when Plaintiffs commenced this

2    action.

### Count II
### Violation of Section 12(a)(2) of the 1933 Act
### Against All Defendants

70.    Plaintiffs incorporate each and every preceding paragraph by reference.

71.    This Cause of Action is brought pursuant to § 12(a)(2) of the 1933 Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class, against all defendants.

72.    This Cause of Action does not sound in fraud.  Plaintiffs do not allege that defendants had scienter or fraudulent intent, which are not elements of a § 12(a)(2) claim.

73.    By means of the defective Prospectus, defendants promoted and sold the Class A common stock to Plaintiffs and other members of the Class, and solicited their purchase of stock.

74.    The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiffs and other members of the Class who purchased the Class A common stock the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions as set forth above.

75.    Plaintiffs did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time Plaintiffs acquired the Class A common stock.

76.    By reason of the conduct alleged herein, defendants violated § 12(a)(2) of the 1933 Act.  As a direct and proximate result of such violations, Plaintiffs and the other members of the Class who purchased the Class A common stock sustained

18

damages in connection with their purchases. Accordingly, Plaintiffs and the other members of the Class who hold the Class A common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their Class A common stock to the defendants sued herein. To the extent Class members have sold their Class A common stock, they seek damages to the extent permitted by law.

## Count III
### Violation of Section 15 of the 1933 Act
### Against Snap and the Individual Defendants

77. Plaintiffs incorporate each and every preceding paragraph by reference.

78. This claim is brought pursuant to Section 15 of the 1933 Act, 15 U.S.C. § 77o, against Snap and the Individual Defendants.

79. Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Snap within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Snap to engage in the acts described herein.

80. Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiffs and the Class.

81. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiffs and the Class for damages suffered.

82. Snap and the Individual Defendants were each culpable participants in the violations of Section 11 of the 1933 Act alleged in Count I above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the IPO to be successfully completed.

///

///

Complaint for Violations of the Federal Securities Laws

Doc# 1 Page# 19 - Doc ID = 1704312660 - Doc Type = OTHER

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.    Under Section 382 of the California Code of Civil Procedure, certifying this action as a class action, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class counsel;

B.    Declaring that defendants have violated the 1933 Act by virtue of the acts described herein;

C.    Awarding damages in favor of Plaintiffs and the Class against all defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;

D.    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

E.    Awarding rescission or a rescissory measure of damages; and

F.    Granting such equitable, injunctive, or other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: July 25, 2017        Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)

_____
Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:    (858) 914-2001
Facsimile:    (858) 914-2002
Email:      fbottini@bottinilaw.com
           achang@bottinilaw.com
           ykolesnikov@bottinilaw.com

*Attorneys for Plaintiffs*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
7817 Ivanhoe Avenue, Suite 102, La Jolla, California 92037
TELEPHONE NO.: **(858) 914-2001**   FAX NO.: **(858) 914-2002**
ATTORNEY FOR *(Name):* Plaintiffs Chenghsin D. Hsieh and Wei C. Hsieh

**FILED**
Superior Court of California
County of Los Angeles

**JUL 25 2017**

Sherri R. Carter, Executive Officer/Clerk
By _____ , Deputy
Shaunya Bolden

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street, Room 102
MAILING ADDRESS: 111 North Hill Street, Room 102
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Hsieh v. Snap Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | **BC 669394** |
| (Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

By Fax

**1.** Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

**2.** This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [✓] Large number of separately represented parties    d. [✓] Large number of witnesses
  b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  c. [✓] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply):* a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
**4.** Number of causes of action *(specify):* 3
**5.** This case [✓] is [ ] is not a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 25, 2017
Francis A. Bottini, Jr.
_____
(TYPE OR PRINT NAME)   ►   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|




CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

CM-010 [Rev. July 1, 2007]

### CIVIL CASE COVER SHEET

Page 2 of 2

| SHORT TITLE: Hsieh v. Snap Inc., et al. | CASE NUMBER BC 6 6 9 3 9 4 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
### STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**By Fax**

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Hsieh v. Snap Inc., et al. | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: | Hsieh v. Snap Inc., et al. | CASE NUMBER | |
|---|---|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☒ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

Doc# 1 Page# 25 - Doc ID = 1704312660 - Doc Type = OTHER

| SHORT TITLE: Hsieh v. Snap Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: ___July 25, 2017___

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

Doc# 1 Page# 26 - Doc ID = 1704312660 - Doc Type = OTHER